POZORSKI, Appellant, vs. GOLD RANGE COMMONWEALTH
CORPORATION and another, imp., Respondents.

*April 6—April 26, 1910.*

*Contracts: Validity: Corporations: Sale of bonds.*

1. Contracts in violation of the common law or statutes are void and
   cannot be made the foundation for the enforcement of a legal
   right.
2. A contract by which plaintiff was to sell the bonds of a corpora-
   tion, receive the proceeds and expend them for its benefit, re-
   ceive all the proceeds of the corporate business and retain for
   himself fifty per cent. thereof, as part compensation for his
   services in selling the bonds, until such fifty per cent. should
   equal the amount received from the sale of the bonds, and was
   to have a first lien on all the property of the corporation to se-
   cure payment to him of an amount equal to the proceeds of the
   bonds sold by him, in legal effect made plaintiff the owner of
   the proceeds of the bonds, with an obligation to advance the
   money to the corporation upon security for its repayment, and
   was in violation of sec. 1753, Stats. (1898), because under it the
   corporation would not actually receive seventy-five per cent. of
   the par value of the bonds in money, labor, or property.

APPEAL from an order of the circuit court for Milwaukee
county: W. J. TURNER, Circuit Judge. *Affirmed.*

This is an action to recover damages for the alleged breach
of a contract. The parties of the first part to the contract
are the defendant corporation, which is incorporated under
the laws of Arizona, and the president and secretary thereof
individually. The parties of the second part are the plaint-
iff and Fred S. Garland of Iowa. Mr. Garland has assigned
his interest in the contract to the plaintiff.

The first paragraph of the contract makes certain repre-
sentations as to the property owned by the corporation and as
to the value thereof. The plaintiff alleges that these repre-
sentations are false.

By the second paragraph the mining company agrees to

pay, in advance, the estimated expenses of the plaintiff and the expenses and fees of a mining engineer to be selected by the plaintiff for examining the corporation's mining claims and titles.

In the third paragraph the plaintiff agrees to make the examination, beginning this undertaking within one week after a sufficient amount to cover such expenses is paid, and to deliver to the corporation a report of the examination within two weeks after the examination. The plaintiff alleges that the corporation has breached the contract and refused to advance money for the expenses as was agreed under the contract.

By the fourth paragraph of the contract the plaintiff and his associate in the contract were given an option, for the period of sixty days after the date of the written report provided for in paragraph 3, "to sell for the said corporation $30,000 par value of its first mortgage ten-year gold bonds . . . of a total authorized issue of $150,000 secured by a first mortgage or trust deed on all of its property and in which *S. J. Pozorski* is to be named as trustee." The bonds, trust deed, and authority to issue were to be in such terms, manner, and form as their attorney approved, and the defendants agreed to have abstracts of title prepared showing good title and that the property was free from incumbrances. The defendants were to have the bonds and trust deed executed and "to send such $30,000 worth of such negotiable bonds to *S. J. Pozorski* at Milwaukee, Wisconsin, to be by the said second parties sold from time to time for par without interest." If the option should be exercised it was agreed that the corporation would, "in consideration of services already rendered and to be rendered at the time such option is exercised, deliver to *S. J. Pozorski* 300,000 shares of its stock of the par value of $1 each."

The plaintiff and his associate agreed to use their best efforts to sell the bonds. All money received from the sale

of the bonds was to be deposited with *S. J. Pozorski*, who was to be trustee "to hold and to receive the said moneys and to expend the same in purchasing and erecting machinery for a mill or to make other improvements, . . . or in paying off the said indebtedness of $10,000 hereinbefore referred to, or for such other purposes as he may think proper to make the said properties profitable, or to obtain patents from the United States government to said claims." For every $100 received by him from the sale of the bonds *S. J. Pozorski* was to have the privilege and right to deliver 1,000 shares of stock, and to have charge and control of any stamping mill or mills or other reduction works at which the ores from the property were to be treated. The agreement also provides that he is

"to have and receive all the proceeds or income from such mill or reduction works or from the sale of any ores or minerals mined from the said properties and to pay not more than fifty per cent. of all the gross proceeds therefrom for the benefit of the said corporation in expenses of mining or reducing ores or other proper expenses and to retain the other fifty per cent. of such proceeds of such sales until fifty per cent. so to be retained by him shall amount to the amount he has received from the proceeds of sale of the bonds hereinbefore referred to, which said fifty per cent. the parties of the second part herein are to have as their own as part compensation for services rendered in the sale of the said bonds. It is also agreed that the said *S. J. Pozorski* shall have a lien on all of the property of the said corporation, real and personal, prior to the lien of the said trust deed or mortgage hereinbefore referred to and prior to any other incumbrances on the said property to secure payment to the parties of the second part of an amount equal to the amount received by the said *S. J. Pozorski* as proceeds from the sale of any bonds which may be sold by the said parties of the second part."

The defendants agree not to issue bonds above a specified amount and for a specified purpose "without the consent and approval of the said *S. J. Pozorski*, and that the said corpora-

tion is not to make any further indebtedness of whatsoever kind or description without the consent of the said $S$. $J$. *Pozorski*."

By the fifth paragraph of the contract each of the parties of the second part obtained a one-half interest in the profits arising out of the contract.

The trial court sustained the general demurrer of the defendant corporation and *C. D. Van Duzer*, on the ground that the face of the contract showed an illegal purpose; therefore the courts would not lend their aid to its enforcement. This is an appeal from the order of the court sustaining the demurrer.

For the appellant there was a brief by *Glicksman, Gold & Corrigan*, and oral argument by *Clifton Williams*.

For the respondents there was a brief by *Bloodgood, Kemper & Bloodgood*, attorneys, and *Jackson B. Kemper*, of counsel, and oral argument by *Jackson B. Kemper*.

SIEBECKER, J.   The plaintiff seeks recovery for the breach of this contract. It is alleged that the representations therein made concerning the ownership of the mining property, with stated improvements, that it was a corporation with a paid-up capital stock of the stated amount, and that its properties were free from indebtedness, were false; and that by reason of such false representations and defendants' failure to advance to plaintiff the money as agreed in the contract, for the purpose of paying the expenses of himself and a mining engineer to make examination of the mining property, plaintiff suffered damages by being prevented from earning the commission he was to receive for making sale of the corporate bonds and in using the avails thereof for constructing mills on this property under the terms and conditions of the written contract. The trial court sustained the defendants' demurrer to the complaint upon the ground that the material

parts of the agreement were fraudulent in their nature and against the public policy of the state, and that a court would not therefore lend its aid to enforce the contract.

It is well established that contracts in violation of the common law or the statutes are void, and that parties thereto will not be given the aid of courts to enforce claims arising thereunder, because the law does not permit that such a contract be made the foundation for the enforcement of a legal right. *Melchoir v. McCarty,* 31 Wis. 252; *Pearson v. Kelly,* 122 Wis. 660, 100 N. W. 1064.

The stipulations of this contract pertaining to the sale of the bonds of the corporation are that the plaintiff and his associate have the right on their part to sell the corporate bonds secured by a first mortgage or trust deed, in which plaintiff was to be the trustee, and that all the money realized from the sale of such bonds was to be received and held by the plaintiff as trustee. It was further agreed that the plaintiff was to purchase and erect machinery for a mill, to make such other improvements of the mining property, or to pay existing debts against the corporation, incurred in the acquisition of the property, as in his judgment he should deem proper for a profitable operation of the properties, or he might make such expenditures to obtain patents on the properties from the United States; and the plaintiff and his associate were to "have a lien on all of the property of the said corporation, real and personal, prior to the lien of the said trust deed or mortgage hereinbefore referred to and prior to any other incumbrances on the said property, to secure the payment to the parties of the second part of an amount equal to the amount received by the said *S. J. Pozorski* as proceeds from the sale of any bonds." This is an agreement by the corporation to pay plaintiff and his associate for their services an amount equal to the sum realized from the sale made by them of the corporate bonds, and that they should have such

a lien that they would be the first to be paid out of the proceeds of the bonds or out of the property into which the proceeds might have been converted. It is in effect an agreement to pay plaintiff and his associate out of the avails of the bonds sold and out of the company's other property an amount equal to the face value of such bonds. The effect of the contract is that the plaintiff obtains a first lien upon the proceeds of the bonds sold or the avails thereof, in machinery or other property, which would enable him to apply the money realized from the bonds to pay himself and associate for negotiating them and for investing the proceeds in machinery to operate this mine. In substance it is an arrangement by which plaintiff was to advance to the corporation money realized on its bonds and to be secured the repayment thereof as compensation for services rendered to the whole amount he has realized. In other words, plaintiff, as trustee, is in this circuitous manner made the owner of the funds received by him from the sale of bonds, and whatever part of such funds he should advance to the company would be secured by a first lien on all of the corporation's property. In legal effect, this treats him as the owner of the proceeds of the bonds, with an obligation to advance such sums as may be required for the equipment and operation of the mine, and in case the mine fails to produce sufficient to repay such sum he retains an interest in the property, acquired by the money he so advanced to the corporation, to make good to him the amount so advanced. Under these conditions the corporation does not actually receive the proceeds of the bonds, but only a conditional promise that it shall be paid such proceeds if plaintiff's undertaking to operate the mine shall produce an income sufficient to pay double the amount realized from the sale of the bonds, and in the event that the mine does not produce such an income the corporation never would receive the proceeds of the sale of the bonds. Under such circumstances the plaintiff would retain them under his claim of

lien provided in the contract. This violates sec. 1753, Stats. (1898), which provides:

"No corporation shall issue . . . any bonds or other evidence of indebtedness except for money, labor or property estimated at its true money value, actually received by it, equal to seventy-five per cent. of the par value thereof, and all . . . bonds issued contrary to the provisions of this section . . . shall be void."

We consider that the arrangements between the plaintiff and the corporation and the other defendants, as embodied in the contract before us, do not operate so that the corporation will actually receive seventy-five per cent. of the par value of the bonds in either money, labor, or property, as provided in this section of the statutes. The contract is therefore a violation of this statute and hence void. It contravenes the law and public policy of the state, and plaintiff cannot rely on it to enforce an alleged legal right. *Melchoir v. McCarty,* 31 Wis. 252, and decisions of this court wherein it is cited.

It is unnecessary to consider other grounds of alleged illegality of this contract which were suggested in argument, nor the question whether plaintiff's alleged damages are purely speculative and prospective losses such as are not recognized in the law.

*By the Court.*—The order appealed from is affirmed.