Hinkley Company, Plaintiff, vs. Gerlinger Electric Steel Casting Company and others, Defendants: Pelton, Receiver, and others, Appellants, vs. First Wisconsin National Bank, imp., Respondent.

*October 9—November 5, 1929.*

For the appellants E. T. Pelton, receiver, and certain bondholders there was a brief by *Wheeler, Witte & Bark* of Milwaukee, and oral argument by *Lyman G. Wheeler.*

For the appellants Sterling Motor Truck Company and Teutonia Avenue State Bank there was a brief by *Drought & Drought* of Milwaukee, and oral argument by *Ralph J. Drought.*

For the respondent there was a brief by *Wood, Warner & Tyrrell* of Milwaukee, and oral argument by *John C. Warner* and *Edgar L. Wood.*

FOWLER, J. It is contended by the plaintiff bank that the transactions through which the bank received the bonds constituted an ordinary pledge of the bonds as security for the note of the corporation at the time existing and for all future obligations of the corporation to the bank, whether the latter should arise directly by loans evidenced by notes or indirectly by discounting the corporation bills receivable or other paper; and by the receiver and other bondholders that the transaction was not a pledge, and that the bonds could be used only for sale by the corporation and the proceeds applied in reduction of the debt evidenced by the original note, strictly in accordance with the oral arrangement made at the time of the delivery of the bonds to the bank.

Appellants base their contention that the bonds were not pledged on two general grounds: (1) that the statutes do not permit the pledging of its bonds by a corporation as collateral security; and (2) that if the statute does authorize such pledging there was no authority to so pledge the bonds in this case.

Sec. 182.01 (7), Stats., provides that a corporation may mortgage its property to secure payment of its debts or to borrow money, with the consent of the holders of a majority of its stock entitled to vote. The majority of the stockholders voted to execute a trust deed to create a lien on their property to secure such form of indebtedness as the directors might decide upon. The indebtedness here referred to was not only the existing indebtedness, but indebtedness for money that it should become necessary for the corporation to borrow in the future *"from time to time."* The directors' resolution expressly contemplates both and was before the stockholders when they passed their resolution. So the stockholders' resolution must be held to have provided for the issue of bonds secured by trust deed to cover present and future indebtedness of the corporation if the directors should decide upon such a transaction. But if the stockholders' resolution did not contain language technically sufficient to

expressly warrant the directors in putting up the bonds as collateral, the Gerlingers, as principal and managing officers of the corporation, especially in view of their prior course of action with the bank, were clothed with apparent authority to pledge the bonds, assuming statutory authority for pledging them, under the rule of *Marvin v. Anderson,* 111 Wis. 387, 87 N. W. 226; *St. Clair v. Rutledge,* 115 Wis. 583, 92 N. W. 234; *First Trust Co. v. Miller,* 160 Wis. 336, 151 N. W. 813; *Northern Minn. D. F. L. Co. v. Haswell,* 177 Wis. 635, 189 N. W. 263.

Appellants also claim that there is no statutory authority for issuing bonds as collateral security. Sec. 182.06 provides that bonds may be issued for money actually received by it equal to seventy-five per cent. of their par value. If putting bonds up as collateral may be considered as issuing them, this statute authorizes such a transaction. This was considered as an *issue* in *Pfister v. Milwaukee E. R. Co.* 83 Wis. 86, 53 N. W. 27, wherein the court says: "When a corporation puts its bonds beyond its control by hypothecating them as security for loans, . . . it *issues* them within the meaning and intention of the statute." To the same effect is *Pozorski v. Gold Range Comm. Corp.* 142 Wis. 595, 126 N. W. 24. In both these cases the hypothecation involved was held void, but only because it was for less than seventy-five per cent. of the par value of the bonds hypothecated, and *Haynes v. Kenosha E. R. Co.* 139 Wis. 227, 119 N. W. 568, 121 N. W. 124, cites with approval *In re Waterloo Organ Co.* 134 Fed. 345, in which bonds were hypothecated as collateral under a New York statute similar to sec. 182.06.

Appellants also contend that if bonds may be pledged, they may not be pledged under this statute as security for an antecedent debt. This is contrary to the general rule that a corporation has such authority, although there be a constitutional provision against issuing them except for money, labor, or property. Cook, Corporations, sec. 763. The

bonds are negotiable instruments and a pre-existing debt is value within the law of negotiable instruments, and a transferee of a negotiable instrument as collateral security is a taker for value. 5 Uniform Laws Anno. pp. 228, 229.

In *In re Waterloo Organ Co., supra,* $10,500 of bonds issued under a New York statute similar to sec. 182.06 were hypothecated as general collateral to secure an existing debt of $6,415 and future loans contemplated. The debt was increased to $11,000 on strength of the security. It was held that all the bonds were valid in the hands of the pledgee. *First Sav. & T. Co. v. Waukesha C. Co.* 211 Fed. 927, is a case directly in point, as the statute involved was our own sec. 182.06, and the whole of a bond issue was hypothecated as security for pre-existing debts. The pledge was held valid. Upon principle and these authorities we hold that the pledging of the bonds in suit was valid. In considering the question we should consider the purpose of sec. 182.06, which, as stated in the *Pfister Case, supra,* merely "is to protect stockholders and *bona fide* creditors from the improvident issue of its bonds by the corporation." The statute merely provides that at least seventy-five per cent. of the par value of all bonds issued shall go for the general purposes of the corporation. It does so go when they are issued as security for an existing debt at such percentage.

In this connection appellants contend that the hypothecation here involved was invalid in any event because it was not expressly agreed that the hypothecation was for seventy-five per cent. of the par value of the bonds. The *Pfister Case, supra,* makes a general statement to that effect, but such statement was *obiter.* There the hypothecation was for fifty per cent. of the face of the bonds and no future loans or indebtedness was contemplated or involved. It was entirely sufficient for the purpose of that case to say that the bonds involved were void because hypothecated for less than seventy-five per cent. of their face. In the absence of ex-

press agreement or mention of the rate at which bonds are to be hypothecated, the statute is imported into the contract and implies hypothecation at a legal rather than an illegal rate. It is held, under our statute, that it will be so assumed, in *In re Valecia C. M. Co.* 240 Fed. 338. Here it was originally contemplated that the bonds would be sold at par, and later that they might be sold to net eighty-eight per cent. It was not contemplated at any time that they would be sold to net less than that sum. The bank, had it negotiated sales in aid of the corporation, would have been bound to sell for the rate at which the corporation was selling—one hundred per cent. at first, ninety-two per cent. later, and finally eighty-eight per cent. It is plain that no sale for less than seventy-five per cent. was contemplated, and hypothecation at a less rate should not be inferred to have been contemplated.

Appellants contend that the oral arrangement respecting the release of the bonds and handling the avails when sales were made by the corporation shows that a pledge to the bank was not intended. To give effect to the oral stipulation only, even as aided by the resolution authorizing the bonds and the trust deed, would exalt a mere oral arrangement of partial detail above the written provision of the note, which is the most significant and particular feature of the contract. Although the resolution authorizing the bonds was passed in June and the note was executed and the bonds delivered to the bank in July, this does not prevent the note from being considered a part of the contract. The execution of the note, the delivery of the bonds, and the oral arrangement of details for handling were contemporaneous. Some time would necessarily elapse between the passage of the resolution and the delivery of the bonds, for the bonds had to be drafted and printed, and settling the details for handling them would naturally await their delivery. There can be no question that the purpose of the trust deed, as evi-

denced by the resolution authorizing it, was to secure not only the existing debt to the bank but debts to it subsequently to accrue. It was expected that the bonds would sell readily, and the details for handling them were arranged for on this assumption. It was not intended that in case the bonds did not sell, the bank would lose the security created by the trust deed. If appellants' position is correct, failure or even refusal of the corporation to sell the bonds would defeat the bank's security even for the existing debt, notwithstanding the release of the $20,000 mortgage and the advancement of the $116,000 for the improvements. This is not tenable.

It is contended that there was no authority to use the bonds delivered to the bank except for liquidation of the bank's existing debt because the railroad commission did not authorize the sale of the bonds for any other purpose. The authorization was to sell according to the application. The purpose of the issue according to the application was "to liquidate existing indebtedness and provide working capital." The working capital contemplated might as well be secured by hypothecating the bonds as security for loans as by selling them outright.

There remains for consideration whether the court erred in permitting the plaintiff bank to take over the bonds at seventy-five per cent. of their face value. In doing this the court followed the course permitted by the federal court of appeals in the *Waukesha Canning Co. Case, supra.* There when a trustee in bankruptcy was appointed a bank held bonds as collateral security under circumstances quite similar to those here involved. The bonds were taken as security for existing debts without express agreement that they were to be accounted for at seventy-five per cent. of their face, but the talk between most of the creditors and the corporation was that they must under the statute be accounted for at that rate. In the *Waterloo Organ Co. Case, supra,* there was a

provision that "the company should have the privilege to sell any of said bonds to other parties at par, to deliver the proceeds thereof to the bank to be applied upon the indebtedness of the company to the bank, and that thereupon the bank should release and redeliver to the company the bonds so sold and paid for." This was held to require the bank to account for the bonds at par,—that is, apply them in reduction of the debt at that rate, because the contract expressly provided that the bank should sell at par. Where as here the debt exceeds the face of the bonds held as collateral, it can make no difference to any one but the general creditors at what rate the bonds are accounted for, and it can make no difference to the general creditors here, for there will be no dividend to them if they are accounted for at par. We are of opinion that in case the contract of pledge does not fix a less rate the pledgee should be held to sell or account for bonds held as collateral at their market value, but at not less than seventy-five per cent. of their face in any event. This rule results in affirmance of the judgment, as manifestly the bonds could not have been sold by the plaintiff bank for more than the seventy-five per cent. at which the court in effect required that they be accounted for.

It is urged that to permit the bonds to be accounted for at seventy-five per cent. is not fair to the other bondholders, who paid par, or at least ninety-two per cent., for their bonds. The other bondholders are in the same position they would be in had the corporation sold the hypothecated bonds at different rates to different purchasers. The holders share equally in avails of the security, regardless of the price paid on direct purchase. With equal reason they should so share here.

Contention is made that the court should not have permitted the plaintiff bank to account for the bonds for less than eighty-eight per cent. net, for which the order of the commission permitted their sale by the corporation. The hypothecation was made at a time when the Blue Sky Law did not apply. The hypothecation was in July, 1920, and

the order of the commission was not made until March, 1921. Up to this time there was no occasion to apply to the commission for permission to sell the bonds, as no commissions were paid or contemplated up to that time and the organization expenses did not amount to $2,000. Sec. 1753—49, 1 (o), Stats. 1921. Were the court bound to require the eighty-eight per cent. net fixed by the commission to be allowed on accounting had the order of the commission been in force when the bonds were hypothecated, which we need not decide, it is not apparent why it was so bound when the order was not in force when the bonds were hypothecated. At that time the corporation might lawfully hypothecate its bonds to be accounted for at an agreed rate of not less than seventy-five per cent. without going to the commission for a permit.

*By the Court.*—The judgment is affirmed.