In re MIFFLINBURG BODY CO.

Appeal of MIFFLINBURG BANK & TRUST CO.

No. 7876.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 4, 1942.

Decided April 2, 1942.

Samuel Handler, of Harrisburg, Pa. (Gilbert Nurick and Earl Handler, both of Harrisburg, Pa., on the brief), for appellant.

Harry S. Knight, of Sunbury, Pa. (Walter H. Compton, of Harrisburg, Pa., and Knight & Kivko, of Sunbury, Pa., on the brief), for Clarence P. Wynne, trustee in reorganization proceedings of Mifflinburg Body Company, appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

Mifflinburg Body Company and Mifflinburg Bank and Trust Company are Pennsylvania corporations. At various times prior to 1935 the company borrowed moneys from the bank by discounting trade acceptances with it. Occasionally the company substituted its own notes for some of the trade acceptances. No new loans were made after 1935. On April 1, 1938, the company executed a mortgage for $150,000 upon its plant and equipment to secure a bond issue of the same amount. From the sale of some of these bonds it realized $36,800 in cash. It applied the major portion of the cash towards the indebtedness, which was thereby reduced to $93,328.60. The bank, acting in compliance with instructions by the Banking Department of the Commonwealth of Pennsylvania, demanded additional collateral as security for the indebtedness. On October 23, 1938, the company delivered bonds having a face value of $95,000 to the bank as collateral security. On June 11, 1940, creditors petitioned for the reorganization of the company under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq.

In the reorganization proceedings the bank filed a proof of claim as a secured creditor and petitioned that the court determine the value of the pledged bonds. The district court found that the bonds had been issued in contravention of Article 16, Section 7, of the Constitution of Pennsylvania, P.S., and were therefore void and ordered that the bank be treated as an unsecured creditor.

The sole question argued upon the appeal from the district court's order is whether a pledge of bonds to secure a pre-existing indebtedness owing from a Pennsylvania corporation to a Pennsylvania bank and incurred in the regular course of the corporation's business is invalid as in contravention of Article 16, Section 7, of the Pennsylvania Constitution of 1874. That section reads: "No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void. * * *"

The question whether the pledge of its bonds by a corporation to secure a pre-existing debt is in contravention of a state constitution or statute is by no means novel. Under constitutional and statutory provisions similar to that of Pennsylvania, courts in California, Missouri, Montana, New York, South Dakota and Texas have ruled that bonds so pledged are invalid,[1] whereas the courts of Alabama and Wisconsin have ruled that such bonds are valid.[2] These decisions may serve as aids in our construction of the provision in the Pennsylvania constitution if they are based upon persuasive reasoning but primarily our task is to determine what the courts of Pennsylvania have ruled in construing this section of its constitution. For if the state court has construed its own state constitution it is of no consequence that decisions from other states involving similar provisions are to the contrary. Cooper v. Tay-

[1] California: Farmers' Loan & Trust Co. v. San Diego Street-Car Co., C.C.Cal. 1891, 45 F. 518.

Missouri: Kemmerer v. St. Louis Blast Furnace Co., 8 Cir., 1914, 212 F. 63; Mudge v. Black, Sheridan & Wilson, 8 Cir., 1915, 224 F. 919; Cass Bank & Trust Co. v. Sheehan, 8 Cir., 1938, 97 F. 2d 935.

Montana: Pacific Coast Pipe Co. v. Conrad City Water Co., D.C., 237 F. 673, affirmed 9 Cir., 1917, 245 F. 846.

New York: (leading case) In re Progressive Wall Paper Corp., 2 Cir., 1916, 229 F. 489, L.R.A.1916E, 563.

South Dakota: Lyon v. Bleeg, 8 Cir., 1917, 240 F. 405, certiorari denied 244 U.S. 660, 37 S.Ct. 745, 61 L.Ed. 1376.

Texas: Central Lumber Co. v. Fall, Tex.Civ.App.1924, 264 S.W. 513.

[2] Alabama: Nelson v. Hubbard, 1892, 96 Ala. 238, 11 So. 428, 17 L.R.A. 375.

Wisconsin: Hinkley Co. v. Pelton, 1929, 200 Wis. 48, 227 N.W. 308.

lor, 5 Cir., 1932, 54 F.2d 1055, certiorari denied 286 U.S. 554, 52 S.Ct. 579, 76 L.Ed. 1289.

The fact situation involved in the question before us contains two elements, first that the debt was already in existence when the bonds were issued, and second that the bonds were issued not outright but in pledge. Although we have been referred to no decision in Pennsylvania which answers the question, each of its elements has been passed upon by the appellate courts of Pennsylvania. In Wrightsville Hardware Co. v. McElroy, 1916, 254 Pa. 422, 98 A. 1052, the Supreme Court of Pennsylvania held that bonds issued to take up outstanding corporate notes were not issued in contravention of the constitutional provision since the refunding transaction resulted simply in a change of the form of the corporate obligation and not in a fictitious increase of indebtedness. No significance was attached by the court to the fact that the debt for which the bonds were issued was a preexisting debt. In Miller v. Hellam Distilling Co. (No. 1), 1914, 57 Pa. Super. 183, 191, the Superior Court of Pennsylvania held that bonds pledged for a loan less than their face value were not issued in violation of the constitutional provision since there was no fictitious increase of indebtedness involved. The court held further that where a corporation had the power to issue bonds by sale, absolute or conditional, it also had the power to pledge the bonds. While, as we have said, the Pennsylvania courts have not had occasion to pass upon the validity of corporate bonds pledged for a preexisting debt—the exact question now before us— we are convinced by the rulings and reasoning of the two cases to which we have referred that the Pennsylvania constitutional provision does not invalidate bonds so issued.

We are fortified in this conclusion when we consider the Pennsylvania constitutional provision in the light of its language. It will be seen that there is no provision that the bonds may be issued for a present consideration only. The requirement is merely that the consideration be actually received. The significant fact is whether the corporation received a real and bona fide consideration. The emphasis we think may be found in the concluding clause: "and all fictitious increase of stock or indebtedness shall be void." In the present case there was in fact no increase in indebtedness. The company continued to owe $93,328.60 after the pledge of the bonds, the identical amount owed by it before they were pledged.

We are the more persuaded that the pledge of the bonds was valid when we consider the reasons for the constitutional safeguards. These have been frequently described in the Pennsylvania cases. Thus in Miller v. Hellam Distilling Co., supra, Judge Kephart said at page 186 of 57 Pa. Super.: "The constitutional provision was intended to prevent the jeopardizing of corporate property by an incumbrance placed upon it where no return, either in money or property, had been received by the corporation; to stop frauds upon stockholders, which would result through the postponement of their equities in favor of those of the bondholders and in diminishing or destroying the return due to the stockholders; and, as a bond is generally negotiable, to prevent a fraud upon an innocent purchaser who would take them believing a real consideration passed for their issue; and generally such issue without value would be against public policy. The primary object of this provision was to secure a fair consideration to the company before the bonds passed from its control. Where a corporation requires money to prosecute or extend its business and an effort is made to finance its requirements by a sale or pledge of bonds, it is not the intention of this constitutional provision that the corporate life should be throttled or severely impaired by holding the corporate officers to the duty of securing full value for the sale or pledge of the bonds. To so hold would not only cause serious financial difficulties to the corporation but would be contrary to a settled business policy which has been recognized by the profession as being in accordance with the law and in no wise violating constitutional restrictions."

To the same effect is the statement by Justice Patterson made in Houghten v. Restland Memorial Park, 343 Pa. 625, 23 A.2d 497, 501: "Article XVI, section 7, of the Constitution was not intended to throttle or severely impair the corporate life of a corporation in need of funds to prosecute or extend its business * * * by prohibiting the negotiation of securities issued by it in an effort to finance its requirements, for an amount less than their face value. * * * The primary object of the constitutional provision was to prevent the jeopardizing of the corporate

property and to stop frauds upon stockholders and innocent purchasers, by the issuance of securities not fairly representing money or property received by the corporation, and consistent with this purpose, all that is required is that transactions involving the disposition of corporate securities must be bona fide, and not a mere device to evade the law and impose a greater obligation upon the corporation than there is any occasion for it to assume, in order to obtain the consideration received therefor."

The evil which was sought to be stamped out was the fictitious increase of corporate indebtedness and its resultant fraud upon the creditors of the corporation and the investing public. If the corporation actually receives property or money, if the debt is bona fide, if the transaction is in the ordinary course of business and such as to facilitate the conduct of the corporate affairs and if the execution of the mortgage and the pledge of the bonds are the result of proper corporate action, there is in our opinion no ground for invoking the constitutional prohibition.

The order of the district court directing that the entire claim of the Mifflinburg Bank and Trust Company be considered as an unsecured claim is reversed.