COUNTY OF RACINE, Plaintiff-Respondent.

v.

CITY OF OAK CREEK, Defendant-Appellant.

Court of Appeals

*No. 91-0687. Submitted on briefs September 27,
1991.—Decided October 16, 1991.*

(Also reported in 477 N.W.2d 318.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Lawrence J. Haskin,* city attorney, City of Oak Creek.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *LeRoy Kramer, III,* deputy corporation counsel, Racine County.

On behalf of the League of Wisconsin Municipalities, an amicus curiae brief was filed by *James H. Schneider* of Madison.

Before Nettesheim, P.J., Brown and Snyder, JJ.

SNYDER, J.   The city of Oak Creek, a Milwaukee county municipality, appeals from a judgment ordering it to reimburse Racine county for expenses incurred when the county sheriff's department provided hospital guards for two fugitives from the Oak Creek police. The circuit court found that under contract law and the statutes, the city was bound to reimburse the county. We conclude, however, that even if a contract was struck, it is void because it violates various statutes as well as public policy. We therefore reverse.

The facts are undisputed. Ronald Plummer, an escaped federal prisoner from Indiana, and Lisa Bonvillain, his accomplice in the escape, were spotted in an Oak Creek truck stop parking lot by an Oak Creek police officer. When the officer approached their car, Plummer shot him twice. Nonetheless, the officer gave pursuit, but lost sight of the pair in nearby northern Racine county.

Meanwhile, federal marshals, the state patrol, the Racine county sheriff's department and other members of the Oak Creek police department had picked up the search. Plummer and Bonvillain were found in a Racine county barn, unconscious from self-inflicted drug overdoses. Racine County Sheriff Robert Rohner testified in his deposition that the federal marshals initially wanted

155

to take the prisoners into custody but Oak Creek Police Detective John Siarkiewicz insisted that the pair "belonged to Oak Creek."[1] Detective Siarkiewicz arrested the pair and an ambulance was called.

Sheriff Rohner also testified that because of the gravity of the prisoners' condition, rescue personnel decided to immediately transport them to the nearest medical facility, St. Luke's Hospital in Racine. St. Luke's is a few blocks from the Racine county sheriff's department. Sheriff Rohner then stated that

> the problem came up that it was a long way for Oak Creek officers to go down and guard those prisoners. And I told [Detective Siarkiewicz] that it would be no problem, that I would help them out with guards. However, I would have to call people in on overtime to do it . . .. I can't quote exactly what Siarkiewicz said, but it was something to the effect that, you know, if you could help us out it would be easier for your people to go and guard them than it would be for ours to drive down from Oak Creek. I said no problem, we'll do that.

Two days later, Sheriff Rohner telephoned Oak Creek Police Chief "Eddie" Siarkiewicz about the mounting guard bills. Sheriff Rohner stated in his deposition that when he told Chief Siarkiewicz, "[T]he meter is running and, you know, you're going to get billed for this," Chief Siarkiewicz answered, "[L]et the meter run, don't worry about it." Sheriff Rohner inferred from this exchange that Chief Siarkiewicz at least tacitly agreed that Oak Creek would bear the guard duty costs.

---

[1] At the scene of the arrest, the federal marshals agreed to put a hold on Plummer's and Bonvillain's escape charges. Ultimately, Plummer was charged in Milwaukee county with attempted first-degree intentional homicide. No criminal charges were issued against either Plummer or Bonvillain in Racine county.

During their week of hospitalization, Plummer and Bonvillain were kept under round-the-clock guard by Racine county sheriff deputies. The guard duty, all performed as overtime, cost the county $4,529.77. When the county billed Oak Creek for that amount, Oak Creek refused to pay.

The county sued for reimbursement, arguing that Detective Siarkiewicz contracted with the county to guard the prisoners; that Police Chief Siarkiewicz also assured Sheriff Rohner that Oak Creek would shoulder the costs; that the county had relied upon those representations; and that the city had benefited by the bargain. The trial court agreed and ordered the city to pay $4,529.77 plus costs, fees and 5% prejudgment interest. The city appeals.

On appeal, the city first argues that it is not liable for guarding costs incurred by the county because there was no contract under which it agreed to pay those costs. Furthermore, it contends that even if a "contract" was made, neither the detective nor the police chief had the legal authority to bind the city to it and that such a contract would violate both statutory law and public policy.

We need not determine whether any bargain was struck between the city and the county. Even assuming that the parties had the authority to, intended to, and did contract on behalf of their respective jurisdictions, we hold that such a contract would be void because it violates state law. *See Pozorski v. Gold Range Commonwealth Corp.*, 142 Wis. 595, 599, 126 N.W. 24, 25 (1910).

The trial court first ruled that under sec. 971.19(1), Stats., the costs of guarding the prisoners were properly the responsibility of Oak Creek, a Milwaukee county municipality. Section 971.19(1) provides that, except in situations not relevant here, criminal actions shall be

tried in the county where the crime was committed. Thus, trial would be held in Milwaukee county.

We disagree with the trial court that this venue statute relieves a county of its statutory duty to pay the cost of guarding prisoners arrested within that jurisdiction. We are permitted to disagree because statutory construction is a question of law, reviewable without deference to the trial court. *Kwiatkowski v. Capitol Indem. Corp.,* 157 Wis. 2d 768, 774-75, 461 N.W.2d 150, 153 (Ct. App. 1990).

Crime is not necessarily limited by county lines. Law enforcement officers from several jurisdictions may be called upon to apprehend persons on a crime spree or in flight from a single crime. If the venue statute permitted the sheriff of the county in which the arrest was made to abdicate responsibility, the confusion and emotion already inherent in an arrest scene could become unmanageably magnified as the various parties sought to strike bargains most advantageous to their respective jurisdictions. Later, if other jurisdictions necessarily became involved, those "contracts" might have to be renegotiated. Such a result is absurd, invites chaos, and we decline to apply sec. 971.19(1), Stats., in that manner. *See Kwiatkowski,* 157 Wis. 2d at 775, 461 N.W.2d at 153.

The city and the League of Wisconsin Municipalities, which submitted a brief as *amicus curiae,* contend that such potentially complicated scenarios are avoidable because Wisconsin has statutes governing these situations. We agree. Section 59.24, Stats., for instance, provides that in their respective counties, sheriffs and their deputies are responsible for "apprehending or securing any person for felony or breach of the peace." In addi-

tion, sec. 53.38(1), Stats. (1987–88), in effect when these events transpired, provided:

> If a prisoner needs medical or hospital care . . . the sheriff . . . shall provide appropriate care or treatment and may transfer the prisoner to a hospital . . . making provision for the security of the prisoner.

The county, by contrast, asserts that the fugitives were not prisoners within the meaning of sec. 53.38, Stats. It argues that its involvement in the case arose fortuitously: Oak Creek's request for law enforcement aid and the prisoners' urgent need for medical care which dictated transporting them to the nearest hospital. It contends that the county itself had no claim to nor interest in the fugitives and never filed criminal charges against them because they were "first, last and always prisoners of Oak Creek."

This argument is unpersuasive. First, Plummer and Bonvillain *were* prisoners within the meaning of sec. 53.38, Stats. A "prisoner" includes arrestees and detainees. Section 46.011(2), Stats. (1987–88).

Second, the county's argument suggests that, given these facts, under no circumstances could the county pursue further action against Plummer and Bonvillain. This is not entirely correct. Section 969.11(1), Stats., envisions limited proceedings in the county of arrest when the underlying offense occurred in another county:

> If the defendant is arrested in a county other than the county in which the offense was committed, he or she shall, without unreasonable delay, *either* be brought before a judge of the county in which arrested for the purpose of setting bail or other condi-

159

tions of release *or* be returned to the county in which the offense was committed. [Emphasis added.]

This statute plainly contemplates that either Racine or Milwaukee county could have proceeded against the pair. Accordingly, Racine county had a legal interest in them. ■

We thus are compelled to agree with the city and the league. We can envision troublesome dilemmas arising from promises made and bargains struck in the heat of the moment. The legislature evidently sought to forestall difficulties such as the one this case presents by enacting statutes which govern the responsibilities of the sheriff for the handling and treatment of prisoners arrested and detained in his jurisdiction. The statutes control.

Finally, the trial court's strongly-worded recognition of the need for cooperative law enforcement and its perception that such cooperation was gravely lacking here invites comment. The court found "shameful" Oak Creek's attempt to escape from the financial responsibility it believed the city agreed to assume, saying that the city's action "crossed the line from [fiscal] conservative to 'freeloader.' "

We, too, commend Racine county for its ready and professional response to a neighboring jurisdiction's request for aid in a potentially deadly situation. Further, we realize that budget and personnel constraints are an ever-present factor in administrative decisions, and that the county may have made certain decisions based upon its belief that reimbursement was to follow. While we are not deciding the existence of a binding contract, the communication between the respective law enforcement officials as to the hospital security expenses should not be ignored by the benefiting municipality, here Oak Creek. Cooperation among and within law enforcement's various levels, branches and jurisdictions is crucial to

effective policing and public safety, as well as to continued, positive community relations. If, indeed, this dispute arose from a gentleman's agreement, it would have been better settled in the same manner, outside of the judicial arena.

*By the Court.*—Judgment reversed.