Honorable Gregory M. Banks Island County Prosecuting Attorney P.O. Box 5000 Coupeville, WA 98239
Dear Prosecutor Banks:
By letter previously acknowledged, you have requested an opinion on the following question, slightly paraphrased for clarity:
 Who is responsible for paying the cost of necessary medical treatment of an arrestee during the period after the arrest but before the arrestee is booked and confined in jail — the arrestee, the arresting law enforcement agency, or the agency which operates the jail?
 BRIEF ANSWER
Subject to reimbursement by arrestees who are financially capable of paying for their own medical care, and setting aside certain cases in which the state is responsible for the expenses in question, the costs of providing necessary medical care to arrestees are allocated between the arresting agency and the custodial agency according to an interlocal agreement or contract. Under the relevant statute, the government unit responsible for operating the jail is entitled to reimbursement for necessary medical treatment from the government unit whose officers made the arrest. RCW 70.48.130. Thus, in the absence of such a contract, the responsibility ultimately falls on the unit of government whose officers made the arrest.
 ANALYSIS
The United States Supreme Court has held that prisoners (including both convicted inmates and pretrial detainees) have a constitutional right to be provided with necessary medical care, and this care must be provided at public expense if the prisoner is indigent. City of Revere v.Massachusetts Gen. Hosp., 463 U.S. 239, 103 S.Ct. 2979, 77 L. Ed. 2d 605
(1983); Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L. Ed.2d 251
(1976). These decisions, of course, leave it to the states to determine precisely how this constitutional responsibility will be carried out.
Our state has enacted a statute, RCW 70.48.130, which allocates quite precisely how state and local governments will pay for the cost of providing medical care to "jail inmates."[1] The statute does not define this term. The initial question is whether this statute applies to persons who have been arrested but require medical care before they can be booked and confined in jail.[2] There are no reported Washington cases construing this section, nor could we find legislative history useful in determining whether the term "jail inmate" should be interpreted to include arrestees who require medical attention before booking. However, based on the nature and language of the statute, as well as the reasoning of the Oregon Court of Appeals in analyzing a somewhat different Oregon statute, we conclude that the better reading of RCW 70.48.130 is that it governs responsibility for the cost of medical care under the circumstances about which you inquire. Accordingly, no distinction should be drawn between medical costs for arrestees based on whether or not they have actually been booked and committed to jail before receiving medical attention.
In Rogue Valley Mem'l Hosp. v. Jackson Cy., 52 Or. App. 357,629 P.2d 377 (1981), the Oregon Court of Appeals concluded that an arrestee is effectively in custody when arrested and under the supervision of law enforcement officers, whether or not the jail has booked and formally accepted custody. Based on these "functional[ly] equivalent" circumstances, the Oregon court concluded it would be an unreasonable and absurd interpretation of the statute to assume that the Legislature intended for the statute to have no application. Id. at 363. The same rule of statutory construction is applied by Washington courts. See, e.g., McGinnis v. State, 152 Wn.2d 639, 645, 99 P.3d 1240
(2004) (statutes must be construed to avoid strained or absurd results. Thus, the Oregon court found that the county, which had statutory responsibility for the medical costs of prisoners under that state's laws, also had responsibility for the medical costs of arrestees in physical custody of law enforcement officers. (In the fact pattern before the Oregon court, the arrestees were in physical custody of city police and had not been booked into the county jail.) See also County of Racinev. City of Oak Creek, 165 Wis.2d 153, 477 N.W.2d 318 (1991), in which the Wisconsin Court of Appeals construed the term "prisoner" to include both arrestees and detainees, applying a statute making the custodial agency (the county) responsible for the medical costs of arrestees incurred prior to booking.
We think the reasoning of those cases is persuasive, even though our statutory scheme is somewhat different from those of Oregon and Wisconsin. As was the situation in those cases, an arrestee under the conditions described in your opinion request would have been booked to jail were it not for the need for medical attention. Moreover, RCW70.48.130 provides a comprehensive and carefully considered scheme allocating the medical costs in question among various parties. In this respect, it provides that "[u]nder no circumstance shall necessary medical services be denied or delayed because of disputes over . . . financial responsibility for payment of the costs of medical care provided to confined persons." This statutory language, in conjunction with the comprehensive nature of the statute, suggests that the Legislature intended the scheme to apply to detainees who have not yet been formally booked, rather than to treat them as "outside" the statutory scheme, which would require the courts to devise a system for financial responsibility based on more general constitutional and legal principles. Finally, our statute (unlike those in Oregon and Wisconsin) places ultimate responsibility on the arresting unit of government rather than on the custodial agency, as discussed below. This also strongly indicates that, in the Legislature's judgment, whether the detainee formally was booked into jail at the time medical costs were incurred should not be significant. RCW 70.48.130 provides, first, for circumstances under which the confined person is eligible for medical care services provided by the Department of Social and Health Services (DSHS) under RCW 74.09. To the extent that DSHS does not fully reimburse the costs in question, the statute provides that these costs will be borne equally between the medical care provider and the "governing unit," unless these parties have entered into an agreement providing otherwise. RCW 70.48.130. The term "governing unit" is defined as "the city and/or county or any combinations of cities and/or counties responsible for the operation, supervision, and maintenance of a jail." RCW 70.48.020(7).See also Our Lady of Lourdes Hosp. v. Franklin Cy., 120 Wn.2d 439,842 P.2d 956 (1993).
Second, RCW 70.48.130 discusses the circumstances under which the arrestee can be held responsible for all, or at least a portion, of his or her own medical expenses. The statute permits either the "governing unit" or the health care provider to seek reimbursement from the confined person for the costs of health care services not provided under RCW 74.09, including reimbursement from the arrestee's insurance or other medical benefit program which might provide coverage. RCW 70.48.130. The statute also permits suits against the arrestee to recover medical costs provided by the governing unit or by a medical provider. Id.
Third, the statute provides that to the extent a confined person is unable to be financially responsible for medical costs and is not eligible for benefits paid through DSHS or through private insurance, and in the absence of an interlocal agreement or contract to the contrary, the "governing unit" (that is, the agency having custody over the arrestee/inmate) may obtain reimbursement from "the unit of government whose law enforcement officers initiated the charges on which the person is being held in the jail". Id.[3]
Although a jail may be operated by a county, a city, or a combination of the two (RCW 70.48.090, .095, .180, .190), most jails in Washington are still operated by counties. In such a county, the county itself is the "governing unit" for purposes of applying RCW 70.48.130. By contrast, the "unit of government whose law enforcement officers initiated the charges" may be the county itself (where the county sheriff's office makes the arrest in question), but might also be a city, town, the state (if the arresting officers are state patrol officers, or officers of another state agency with law enforcement powers), or another unit of local government whose officers have the power to arrest.[4]
To clarify our understanding of the statutory language, we will assume a situation in which the police department of a city has arrested a person on criminal charges. Before the arrestee can be booked and committed to the custody of the county jail, medical needs must be addressed. If (1) the arrestee does not qualify for state-provided medical care under RCW 74.09, (2) the charge does not relate to escape from a state facility or a crime alleged to have been committed in a state facility, (3) the arrestee cannot afford to pay for the medical care, and (4) there is no city-state contract covering the costs, RCW70.48.130 ultimately makes these costs the responsibility of the "unit of government whose law enforcement officers initiated the charges on which the person is being held in the jail" through a right to reimbursement. As we understand the statute, in our example, the responsible governmental unit ultimately responsible would be the city whose officers have made the arrest leading to the arrestee's confinement in jail.
There is one more question to consider: What is the meaning of the phrase "law enforcement officers initiated the charges" as used in the quoted sentence from RCW 70.48.130? A person may be arrested when a warrant is issued after an indictment is found or an information is filed by a prosecuting attorney. CrR 2.2; CrRLJ 2.2. Under some circumstances, however, an arrest can occur without a warrant. CrR 3.2.1; CrRLJ 3.2.1. See, e.g., State v. Pulfrey, ___Wn.2d ___,111 P.3d 1162 (2005) (police officer may arrest for a misdemeanor committed in his presence); State v. Gaddy, 152 Wn.2d 64, 93 P.3d 872
(2004) (officer could arrest without a warrant based on information from state Department of Licensing). When a person is detained in jail following a warrantless arrest, it seems clear that the agency whose officers made the arrest has "initiated the charges" for purposes of applying the statute.
However, in those cases in which an arrest is made pursuant to a warrant, which in turn is based on the filing of an information by the prosecuting attorney, who is the "law enforcement officer initiating the charges"? Are the charges initiated by the prosecuting attorney, who may be a county or a state officer, or by the police officer or sheriff's deputy who makes the arrest? Despite the use of the phrase "initiating the charges," and granting that county prosecutors or city attorneys can be described as "initiating charges" in a sense, we have reviewed the numerous statutory references to the term "law enforcement officer" and note that we could find no examples in which this term includes prosecuting attorneys. For example, the term "law enforcement officer," for purposes of defining the coverage of the Law Enforcement Officers' and Fire Fighters' Retirement System, means "any person who is commissioned and employed by an employer on a full time, fully compensated basis to enforce the criminal laws of the state of Washington generally" with certain exceptions not relevant here. RCW 41.26.030(3). Since the term "law enforcement officer" consistently refers in Washington statute to commissioned officers with the power to arrest, and not to prosecutors, we conclude that RCW 70.48.130 used the term in the same sense.[5] Thus, we reach the opinion that in the absence of an interlocal agreement providing otherwise, the statute places ultimate responsibility for medical care on the agency whose officers have made the arrest leading to the imprisonment of the detainee, whether the medical expenses are incurred before or after the detainee is formally booked into the jail.[6]
We trust that the foregoing information will prove useful.
Sincerely,
ROB MCKENNA, Attorney General
JAMES K. PHARRIS, Senior Assistant Attorney General
:pmd
[1] We discussed several points concerning this statute in an informal opinion about five years ago. Letter from Jeffrey Even, AssistantAttorney General, to David McEachran, Whatcom County Prosecuting Attorney(Sept. 14, 2000) (attached to this opinion). Neither the statutory language nor the case law has changed, and we reaffirm the conclusions of that informal opinion, which dealt with the allocation of costs of medical care for inmates after booking and confinement.
[2] In AGO 1980 No. 21, we concluded that the county jail was responsible for the care, housing, and board of a prisoner held in the county jail, even when arrested by a city or town police officer. However, we specifically disclaimed discussing the issue of responsibility for medical care under RCW 70.48.130. AGO 1980 No. 21, at 2.
[3] At this point in the statute, there is a proviso to the effect that where services are related to state prisoners being held in a jail who are accused of either escaping from a state facility or committing an offense in a state facility, the state is responsible for reimbursement.
[4] Jails are also authorized to accept arrestees confined or committed under federal process if the United States makes provision for the support of such persons and for additional personnel required. RCW70.48.140. Presumably, the jail would obtain the agreement of federal officials to reimburse for medical costs associated with federal detainees and prisoners.
[5] In any case, we are aware that prosecutors typically file information and seek arrest warrants on the basis of police reports, although it is a theoretical possibility that a prosecutor could file charges and seek a warrant in a case in which no law enforcement officer or agency has played a role. It seems unwarranted to apply a different rule to these rare cases, however.
[6] The financial responsibilities of the arresting agency terminate when the detainee's charges are disposed of by sentencing or otherwise, unless there is an interagency agreement providing otherwise. RCW70.48.130.