[No. 50213-7.   En Banc.   May 30, 1985.]

HARRISON MEMORIAL HOSPITAL, *Respondent*, v.
KITSAP COUNTY, *Appellant*.

*Lane, Powell, Moss & Miller,* by *D. Joseph Hurson* and *David M. Schoeggl; C. Danny Clem, Prosecuting Attorney,* and *Patricia J. Schafer, Deputy,* for appellant.

*Sanchez, Martin, Paulson & Mitchell,* by *Bruce G. Martin* and *Anna M. Laurie,* for respondent.

DORE, J.—Does RCW 70.48.130 require Kitsap County to pay the post–incarceration medical expenses incurred by Charles Schickler at Harrison Memorial Hospital? The trial court granted summary judgment in favor of Harrison Memorial Hospital. We affirm.

## FACTS

On October 9, 1982, Schickler was booked into the Kitsap County Jail for investigation of burglary and car theft. Sometime on October 10, 1982, Schickler attempted to commit suicide in his cell. Upon discovering the comatose Schickler, the jail staff contacted an ambulance service which transported Schickler to Harrison Memorial Hospital (Harrison) for medical treatment. Schickler remained comatose at Harrison until his death on September 5, 1984. Apparently because of his condition, Schickler was never charged by information with any crime by Kitsap County.[1] Nor was Schickler ever formally discharged or released from the custody of the Kitsap County Jail. Kitsap County never informed Harrison, until the commencement of these proceedings, that it did not accept the financial responsibility of Schickler's necessary medical expenses except for the first 3 days of confinement at Harrison.

On May 19, 1983, Harrison presented to Kitsap County a claim for the costs of Schickler's medical care, a total of $61,613.45 as of midnight on May 9, 1983. Receiving no response, Harrison sued the County for the costs already incurred by Schickler and for any charges that would

---

[1] On October 26, 1982, the King County Prosecutor filed an information against Schickler charging him with murder. This charge was apparently based on separate acts committed in King County. Because of Schickler's condition, that information was dismissed without prejudice on April 29, 1983.

accrue while Schickler remained hospitalized. Both parties subsequently moved for summary judgment.

Schickler's wife requested that Harrison make a determination of her eligibility for federal funds in order to help meet the costs of her husband's continued care. The hospital would not process her request, however, because it did not consider the form a completed request. The hospital suggested that Mrs. Schickler resubmit the form.

The trial court entered a summary judgment in favor of Harrison and against Kitsap County for the accrued and continuing medical expenses incurred by the hospital in caring for Schickler while he remained in a comatose condition.

## PAYMENT FOR NECESSARY MEDICAL CARE

Initially, we point out that this action concerns solely the allocation of the cost of medical services provided Schickler. This requires application of state statutory law and does not concern the constitutional obligation to provide a confined person needed medical attention. Kitsap County fulfilled its federal constitutional obligations by seeing that Schickler was taken promptly to the hospital providing treatment necessary for his injury. So long as the governmental entity ensures that medical care needed is in fact provided, the constitution does not dictate how cost of that care should be allocated as between the entity and provider of the care. Rather, this is a matter of state law. *See Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 77 L. Ed. 2d 605, 103 S. Ct. 2979 (1983).

Thus, the resolution of this action depends upon the provisions of RCW 70.48, the City and County Jails Act. One of the purposes of this act in effectuating the state policy of humane and safe jail environs is to provide for a determination of the role of state and local units of government with regard to the custody of persons who are arrested for or convicted of violating statutes or ordinances which define crimes. RCW 70.48.010. Specifically addressing the allocation of the costs of emergency health care,

RCW 70.48.130 in pertinent part provides:

> Payment for emergency or necessary health care shall be by the governing unit, except that the department shall reimburse the governing unit for the cost thereof if the confined person requires treatment for which such person is eligible under the department's public assistance medical program.
>
> The governing unit may obtain reimbursement from the confined person for the cost of emergency and other health care to the extent that such person is reasonably able to pay for such care, including reimbursement from any insurance program or from other medical benefit programs available to such person. To the extent that a confined person is unable to be financially responsible for medical care and is ineligible for financial assistance from the department or from a private source, the governing unit may obtain reimbursement for the cost of such services from the unit of government whose law enforcement officers initiated the charges on which the person is being held in the jail: *Provided,* That reimbursement for the cost of such services shall be by the state for state prisoners being held in a jail who are accused of either escaping from a state facility or of committing an offense in a state facility.

"Governing unit" is defined as the county or city responsible for the operation, supervision and maintenance of the jail. RCW 70.48.020(11). "Health care" is defined in RCW 70.48.020(6) as preventive, diagnostic and rehabilitative services provided by licensed health care professionals and/or facilities.

The first sentence of RCW 70.48.130 dictates that payment for emergency and necessary health care of Schickler shall be by Kitsap County, the governing unit responsible for the operation of the jail. Additional provisions providing for possible reimbursement to the County by Schickler, the Department of Social and Health Services, another governmental unit, or another public assistance agency are irrelevant to this action between the health care provider (Harrison) and the governing unit (Kitsap County).

Kitsap County concedes that it is statutorily responsible for Schickler's medical expenses for the initial 72 hours of

his confinement. As such, it admits that Schickler was confined during his initial confinement at Harrison. The County contends, however, that its obligation ended 72 hours after his arrest since Schickler was never indicted or otherwise charged by Kitsap County. In making this argument, the County relies primarily on CrR 3.2A(c)(1). That rule states:

> Unless an information or indictment is filed or the affected person consents in writing or on the record in open court, a defendant shall not be detained in jail or subjected to conditions of release for more than 72 hours after the defendant's detention in jail or release on conditions, whichever occurs first. Computation of the 72-hour period shall not include any part of Saturdays, Sundays, or holidays.

Thus, the County concludes that it was not the governing unit confining Schickler subsequent to the expiration of the 72 hours of initial detention.

Harrison, on the other hand, argues that CrR 3.2A(c)(1) is not controlling in determining whether Schickler was "confined" pursuant to RCW 70.48.130. As the hospital points out, the rule was designed to protect a prisoner's constitutional privileges; it does not address the issue of who pays for an indigent prisoner's medical care. In addition, the County may be using an overly technical or restrictive definition of "confined". Although the County never arraigned or reimprisoned Schickler, it could not take such actions because of his condition. The County was aware, however, that Schickler's condition prevented him from leaving the jurisdiction. Thus, the hospital contends that the County did not need to formally confine Schickler in order to ensure his appearance at an arraignment had he regained consciousness.

Although Washington courts have not addressed this question, several other jurisdictions have considered similar cases. In *Mercy Med. Ctr., Inc. v. Douglas Cy.*, 28 Or. App. 557, 559 P.2d 1286 (1977), the Oregon court had occasion to interpret a statute which requires the "keeper of each local

correctional facility" to provide "prisoners in his custody" with necessary medical care. Or. Rev. Stat. § 169.140. The medical expenses for "all persons duly committed" are to be paid by the County. Or. Rev. Stat. § 169.150. Charles Fortney was shot by a deputy sheriff while in the course of burglarizing a school building. Subsequently, he was taken to Mercy Hospital for treatment of injuries to his spinal cord which resulted in his complete paralysis. The County admitted that Fortney was in custody until June 20, 1975. On that date, he was released on his own recognizance to be transported to another medical care facility. Fortney was never transferred, however, and he remained hospitalized until July 29, 1975. The hospital claimed Fortney was "in custody" throughout his stay in the hospital and sought payment for all of his treatment from the County. The court, construing Or. Rev. Stat. § 169.140, stated: "Statutory liability extends to the cost of hospitalization where the circumstances imply that the prisoner is in the sheriff's custody, even though some of the procedural niceties of formal custody may not have been observed." *Mercy Med. Ctr., Inc.,* at 560. The court held, therefore, that the County was liable for the entire cost of Fortney's treatment.

Following this lead, the court in *State Bd. of Higher Educ. v. Washington Cy.,* 52 Or. App. 369, 375, 629 P.2d 373, *review denied,* 291 Or. 368, 634 P.2d 1347 (1981), held that

"custody," within the meaning of the statutes, exists whenever the prisoner is either placed under guard or where his physical condition makes it such that he could not leave the hospital of his own free will and, in either case, whenever the circumstances imply that the prisoner was so confined to assure his ultimate attendance at trial . . .

*Accord, Rogue Vly. Mem. Hosp. v. Jackson Cy.,* 52 Or. App. 357, 629 P.2d 377, *review denied,* 291 Or. 368, 634 P.2d 1347 (1981).

The Kansas court in *Dodge City Med. Ctr. v. Board of*

*Cy. Comm'rs,* 6 Kan. App. 731, 634 P.2d 163 (1981) held that Gray County was liable for payment of a wounded felony suspect's hospital expenses because he was in "custody" while hospitalized, despite the fact that he was not under guard while hospitalized and not formally arrested until discharged from the hospital. *Accord, Mt. Carmel Med. Ctr. v. Board of Cy. Comm'rs,* 1 Kan. App. 2d 374, 566 P.2d 384 (1977).

These cases support Harrison's argument that Schickler was "confined" while receiving treatment at Harrison. Other courts construing similar language are in accord. *Washington Township Hosp. Dist. v. County of Alameda,* 263 Cal. App. 2d 272, 69 Cal. Rptr. 442 (1968); *Hospital Servs., Inc. v. Dumas,* 297 N.W.2d 320 (N.D. 1980); *St. Mary of Nazareth Hosp. v. Chicago,* 29 Ill. App. 3d 511, 331 N.E.2d 142 (1975). *But see Plantation v. Humana, Inc.,* 429 So. 2d 37 (Fla. Dist. Ct. App. 1983) (lack of governmental liability where no showing of statutory authority or contractual relationship).

A commonsense interpretation of RCW 70.48.130 and interpretations given similar statutes by other jurisdictions support a finding that the County is statutorily liable for the medical expenses incurred by Schickler. The circumstances of Schickler's physical condition made it such that he could not leave the hospital of his own free will and nothing in the record indicates that Kitsap County would not seek to detain Schickler had he been able to be released from Harrison. Therefore, we find that Kitsap County was the governing unit responsible for the necessary medical expenses incurred by Schickler during his entire stay at Harrison.

## HILL–BURTON FUNDS

The County next contends that it is not obligated to pay for Schickler's care because Schickler is entitled to federal funds made available to Harrison. Moreover, the County argues that, even if it were held liable for Schickler's medical costs under RCW 70.48.130, the County would have a

right of reimbursement from these federal funds.

In 1946, Congress enacted the Hospital Survey and Construction Act, 42 U.S.C. § 291 *et seq.,* commonly known as the Hill–Burton Act. This act provides for the distribution of federal funds for the construction and modernization of local hospitals. In exchange for these funds, the act requires that "there will be made available in the facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefor . . ." 42 U.S.C. § 291c(e)(2); *see also American Hosp. Ass'n v. Schweiker,* 529 F. Supp. 1283 (N.D. Ill. 1982). Harrison admits that it is the recipient of Hill–Burton funds and thus makes some medical care available free of charge to indigent persons.

■ The hospital, however, argues that its Hill–Burton funds are not a medical benefit program available to Schickler. The hospital's argument is supported by the opinion in *St. Michael Hosp. of Franciscan Sisters v. County of Milwaukee,* 98 Wis. 2d 1, 295 N.W.2d 189 (Ct. App. 1980). In that case, an indigent patient was treated at the hospital for 5 weeks. The hospital subsequently sought reimbursement from the County pursuant to a statute which rendered the County liable for the medical care of indigent persons entitled to state relief. The County argued that, under this statute, the patient was not indigent because the Hill–Burton Act provided her with a means by which she could pay her medical bills. The Wisconsin Supreme Court held the federal regulations promulgated pursuant to the Hill–Burton Act made it clear that the hospital must first look to the County for payment before looking to Hill–Burton funds. *St. Michael,* at 4–5. *See* 42 C.F.R. § 53.111(f)(2)(i). Thus, the court in *St. Michael* concluded that the Hill–Burton Act was irrelevant and the County could not raise the act as a defense to the hospital's collection action.

We are in agreement with the Wisconsin Supreme Court in *St. Michael.* Hill–Burton funds can only be utilized when other means of payment are unavailable. Kitsap

County's statutory obligation to pay for Schickler's necessary medical treatment is such an available source of payment.

CONCLUSION

A reasonable interpretation of RCW 70.48.130 requires that Kitsap County be held responsible for the necessary health care expenses of Charles Schickler during his confinement at Harrison Memorial Hospital. We further hold that the trial court correctly granted summary judgment in favor of Harrison Memorial Hospital against Kitsap County. Hill–Burton funds are not available as an offset to Kitsap County's statutory obligation to make payment for the necessary health care incurred by Charles Schickler. We affirm.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.