[No. 59246-2. En Banc. January 7, 1993.]

OUR LADY OF LOURDES HOSPITAL, *Respondent*, v. FRANKLIN COUNTY, *Appellant*, THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

440

*Dennis DeFelice, Prosecuting Attorney,* and *George Fearing* (of *Leavy, Schultz & Davis, P.S.*), *Special Deputy,* for appellant.

*Johnston & Roache, P.S.,* by *Mike Johnston,* for respondent Our Lady of Lourdes Hospital.

*Kenneth O. Eikenberry, Attorney General,* and *Melissa Burke-Cain, Assistant,* for respondent State.

BRACHTENBACH, J. — At issue in this case is the extent to which the Department of Social and Health Services (DSHS) must reimburse Franklin County (County) for the costs of inpatient medical care of two county jail inmates hospitalized in 1986.

In September and October 1986, two county jail inmates were hospitalized at Our Lady of Lourdes Hospital (Hospital). The hospital bills for the two inmates totaled over $43,000. The County refused to pay these costs. The Hospital sued the County, seeking payment of the inmates' medical costs. DSHS was brought in as a third party defendant,

with the County asserting a claim against DSHS for reimbursement for any costs the County had to pay.

Although DSHS had previously paid for indigent jail inmates' medical care costs, at the time the two Franklin County inmates were hospitalized WAC 388-100-005 excluded inmates from eligibility for DSHS's Limited Casualty Program for the Medically Indigent (LCP-MI). DSHS maintains that the LCP-MI is the only program under which DSHS can pay medically indigent jail inmates' hospital costs.

Cross motions for summary judgment were filed by all three parties. Venue was changed from Franklin County to Thurston County where other similar actions were pending challenging, among other things, the validity of WAC 388-100-005's exclusion of eligibility for jail inmates. This case was joined with the other cases for purposes of oral argument, following which the trial court issued a memorandum opinion on the issues of a city's or county's liability for its jail inmates' health care, and whether DSHS could validly exclude jail inmates from the LCP-MI. The trial court reasoned that under RCW 70.48.130 and this court's opinion in *Harrison Mem. Hosp. v. Kitsap Cy.*, 103 Wn.2d 887, 700 P.2d 732 (1985), a city or county is obliged to fully pay to a hospital the reasonable costs of its inmates' care regardless of whether and to what extent it is reimbursed by DSHS. The trial court further ruled that DSHS could not exclude jail inmates from the LCP-MI and held invalid WAC 388-100-005's exclusion of jail inmates from eligibility.

In this case, the trial court granted summary judgment in favor of the Hospital and against the County for the full costs of the inmates' hospital expenses. The trial court entered judgment against the County in the amount of $43,443. The court also imposed postjudgment interest on this judgment. The trial court granted in part and denied in part the summary judgment motions filed by the County and DSHS. The court ruled that the County was entitled to be reimbursed to the extent that the State provides benefits under the LCP-MI

to nonconfined medically indigent people. DSHS was ordered to provide medical benefits under the LCP-MI to medically indigent confined persons at the same rate and under the same conditions as are provided to nonconfined people. The trial court held that DSHS's duty to reimburse the County was limited to DSHS's fee schedule and the legislative appropriation, if any, applicable to the LCP-MI. The trial court entered judgment against DSHS in the amount of $3,933.88.

The County appealed. We accepted certification from the Court of Appeals, Division Two. DSHS has not challenged the trial court's ruling that WAC 388-100-005's exclusion of eligibility for jail inmates was invalid.

The following questions must be resolved: (1) Was summary judgment properly granted in favor of the Hospital, *i.e.*, must the County pay the Hospital in full for the jail inmates' medical care costs; (2) was summary judgment properly granted in favor of DSHS on its claim that if it had to reimburse the County, it only had to do so to the same extent it would provide coverage for nonconfined medically indigent persons; (3) should summary judgment have been granted in favor of the County for full reimbursement from DSHS; and (4) was postjudgment interest properly imposed on the amount which the County must pay the Hospital?

We affirm the trial court's holding that the County must pay the Hospital in full for the reasonable medical care costs of the inmates. However, we reverse the trial court's holding that DSHS must reimburse the County only to the same extent as it pays for care for nonconfined medically indigent persons. Summary judgment should have been granted in favor of the County for full reimbursement from DSHS. We reverse the decision imposing postjudgment interest.

■■ Deciding who must pay for the inmates' medical care requires construction of RCW 70.48.130. This case thus presents questions of law which are reviewed de novo on this appeal from summary judgment. *Draper Mach. Works, Inc. v. Department of Natural Resources*, 117 Wn.2d 306, 311, 815 P.2d 770 (1991).

Under the federal constitution the County must provide necessary and emergency medical care for its jail inmates. *Estelle v. Gamble*, 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285, *reh'g denied*, 429 U.S. 1066, 50 L. Ed. 2d 785, 97 S. Ct. 798 (1976). But, "[s]o long as the governmental entity ensures that medical care needed is in fact provided, the constitution does not dictate" who must pay for the care. *Harrison Mem. Hosp. v. Kitsap Cy.*, 103 Wn.2d 887, 889, 700 P.2d 732 (1985) (citing *Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 77 L. Ed. 2d 605, 103 S. Ct. 2979 (1983)). Who must pay is a matter of state law. *Harrison Mem. Hosp.*, at 889.

The County argues that under RCW 70.48.130 it is required to pay for emergency or necessary health care for county jail inmates only to the extent that it is reimbursed for the costs by DSHS. The trial court concluded, however, that the statute unambiguously provides that the duty to pay the costs is on the governing unit. RCW 70.48.130, part of the City and County Jails Act passed in 1977, provides:

> Payment for emergency or necessary health care shall be by the governing unit, except that the department of social and health services shall reimburse the governing unit for the cost thereof if the confined person requires treatment for which such person is eligible under the department of social and health services' public assistance medical program.
> The governing unit may obtain reimbursement from the confined person for the cost of emergency and other health care to the extent that such person is reasonably able to pay for such care, including reimbursement from any insurance program or from other medical benefit programs available to such person. . . . PROVIDED, That reimbursement for the cost of such services shall be by the state for state prisoners [under certain circumstances].
> . . . .
> Under no circumstance shall necessary medical services be denied or delayed pending a determination of financial responsibility.

RCW 70.48.130.

The main goal in construing statutes is to ascertain and give effect to legislative intent. *Cowiche Canyon Conser-*

*vancy v. Bosley*, 118 Wn.2d 801, 813, 828 P.2d 549 (1992). We look to the language of the statute itself. The first part of the first sentence of RCW 70.48.130 provides that the governing unit shall make payment for emergency and other necessary medical care for its jail inmates. The governing unit is the county or city responsible for the operation, supervision, and maintenance of the jail. *See* RCW 70.48.020(7). The second part of the first sentence in the statute says that DSHS must reimburse costs if the inmate is eligible for public assistance medical care. The statute is clear: The County has the primary obligation to pay for the medical care, and DSHS must reimburse costs under certain circumstances.

In the only case in which we have addressed the statute, we said that the first sentence of RCW 70.48.130 requires payment by a governing unit for its jail inmates' medical care, and then said:

> Additional provisions providing for possible reimbursement to the County by [the inmate], the Department of Social and Health Services, another governmental unit, or another public assistance agency are irrelevant to this action between the health care provider . . . and the governing unit . . ..

*Harrison Mem. Hosp. v. Kitsap Cy.*, 103 Wn.2d 887, 890, 700 P.2d 732 (1985).

While it is true that in *Harrison Mem. Hosp.* we were not faced with the exact question before us in this case, the reasoning in *Harrison Mem. Hosp.* follows from the plain language of the first sentence in RCW 70.48.130: "Payment for emergency or necessary health care *shall be by the governing unit* . . .." (Italics ours.)

The trial court correctly ruled that under RCW 70.48.130 the County must pay the Hospital fully for the inmates' medical care costs. There is no dispute as to the amount or reasonableness of the charges. We affirm the trial court's grant of summary judgment in favor of the Hospital.

The next question is *how much* reimbursement is due from DSHS. The County argues that under RCW 70.48.130

DSHS must fully reimburse the County for the costs of the medical care of its medically indigent jail inmates. DSHS contends that RCW 70.48.130 must be read in light of statutes in RCW 74.09, and especially in light of RCW 74.09-.700,[1] which grants discretion to DSHS to determine eligibility requirements and the scope and amount of coverage under the LCP-MI. The statute states that medical care "may be provided" under the program "[t]o the extent of available funds . . .." RCW 74.09.700(1).

■ ■ RCW 70.48.130 alone clearly mandates full reimbursement by DSHS. The statute says that payment shall be by the governing unit, "except that the department of social and health services *shall reimburse* the governing unit *for the cost thereof* if the confined person requires treatment for which such person *is eligible* under the department of social and health services' public assistance medical program." (Italics ours.)

Examination of this statute leads to the conclusion that DSHS must fully reimburse the medical care costs. The statute says that DSHS "*shall reimburse*" the governing unit, here the County. When used in a statute, "shall" generally imposes a mandatory duty. *Department of Ecology v. State Fin. Comm.*, 116 Wn.2d 246, 252, 804 P.2d 1241 (1991).

The statute requires that reimbursement for medical care is to be "*for the cost thereof*", thus commanding full reim-

---

[1]Former RCW 74.09.700 provides:

"(1) To the extent of available funds, medical care may be provided under the limited casualty program to persons not otherwise eligible for medical assistance or medical care services who are medically needy as defined in the social security Title XIX state plan and medical indigents in accordance with medical eligibility requirements established by the department. . . .

"(2) Determination of the amount, scope, and duration of medical coverage under the limited casualty program shall be the responsibility of the department, subject to the following:

"[list of certain standards and requirements]

"(3) The department shall establish standards of assistance and resource and income exemptions."

bursement for the medical care costs. As the County aptly points out, nothing in the statute suggests that DSHS is to reimburse the County for *partial* costs thereof.

The statute states that reimbursement is to be made when a jail inmate "*is eligible*" under the DSHS public assistance medical program. Thus, the determination that a confined person meets eligibility requirements triggers the mandatory obligation of DSHS to reimburse the governing unit. Quite significantly, the statute in no way limits reimbursement to what DSHS would pay for a nonconfined person. While reimbursement is dependent upon whether the inmate meets eligibility requirements for DSHS public assistance medical care, "eligibility" is not the same concept as the *rate* of reimbursement. Thus, the statute does not support DSHS's claim that the Legislature has made reimbursement to cities and counties dependent upon the *terms* of the Department's public assistance medical program. RCW 70.48.130 does *not* make reimbursement for emergency or necessary health care costs dependent upon the *terms* of the Department's medical assistance program. Instead, if the inmates are eligible for that program, then, if the County must pay for medical care expenses for the inmates, DSHS "shall reimburse" the County "for the costs thereof".

DSHS argues, however, that RCW 70.48.130 must be read in light of RCW 74.09. To understand DSHS's argument, some review of legislative history is helpful.

Prior to 1970, RCW 74.09.510 excluded inmates of public institutions other than patients in medical institutions from eligibility for public assistance medical care. Laws of 1967, 1st Ex. Sess., ch. 30, § 4; *see also* former RCW 74.08.025, Laws of 1967, 1st Ex. Sess., ch. 31, § 1 (excluding inmates of public institutions from public assistance). In 1970, RCW 74.09.510 was amended to authorize the State to provide medical assistance to inmates in county or city jails and juvenile detention facilities. Laws of 1970, 1st Ex. Sess., ch. 60, § 1. DSHS then adopted a regulation now codified at

former WAC 388-86-060, which then stated that the Department "shall provide medical care under the appropriate program for an inmate of a city or county jail or of a juvenile detention facility, unless the local jurisdiction accepts responsibility to provide such care, provided the inmate is financially and medically eligible."

Thus, when the City and County Jails Act, RCW 70.48, was passed in 1977, RCW 74.09.510 authorized the State to pay for eligible inmates' medical care, and RCW 70.48.130, enacted substantially in its present form,[2] required the State to pay those costs through reimbursement to the relevant governing unit.

In 1981, the medical assistance program statutes were modified. RCW 74.09.510 was amended, and provided that

Medical assistance may be provided in accordance with eligibility requirements established by the department of social and health services . . . as defined in the social security Title XIX state plan for mandatory categorically needy persons and: (1) Individuals who would be eligible for cas[h][3] assistance except for their institutional status . . ..

Laws of 1981, ch. 8, § 19.

DSHS maintains that with the amendment of RCW 74.09-.510 in 1981, jail inmates were no longer eligible for the medical assistance program under that statute because it became the State's federally controlled Medicaid program. Laws of 1981, ch. 8, § 19. *See* RCW 74.09.010(4) (defining "medical assistance" as the federal aid medical care program for categorically needy persons under Title XIX of the Federal Social Security Act). Federal law prohibits inmates of public institutions from eligibility for Medicaid. 42 C.F.R. §§ 435.1008(a)(1), .1009. Thus, reference to "institutionalized" persons in RCW 74.09.510 does not include jail inmates.

---

[2]The only change to the statute has been the change of "department" to "department of social and health services"; this was not a substantive change, as the act previously had defined "department" as the "department of social and health services". *See* Laws of 1986, ch. 118, §§ 1, 9.

[3]The word is erroneously recorded as "case", but is corrected to "cash" in the statute. *See* RCW 74.09.510.

DSHS states that the only possible "public assistance medical program" for which inmates could be eligible is the "medical only" program, the Limited Casualty Program for the Medically Indigent (LCP-MI), RCW 74.09.700. RCW 74.09-.700 was enacted in 1981. *See* Laws of 1981, 1st Ex. Sess., ch. 6, § 22. DSHS adopted rules to implement the limited casualty program. The program is entirely funded by the State. RCW 74.09.700 neither expressly includes nor excludes city and county jail inmates.

Following the 1981 amendments and enactments, DSHS continued to provide medical benefits to confined medically indigent persons, as mandated by WAC 388-86-060.

Then, early in 1986, DSHS repealed WAC 388-86-060 and amended WAC 388-100-005 to exclude otherwise eligible persons confined in jails, solely on the basis of their institutional status. The amended version of WAC 388-100-005, which excluded county jail inmates from eligibility, was the WAC challenged in the actions in Thurston County as described above. DSHS states that it attempted to eliminate jail inmate eligibility as part of an effort to reduce expenditures and come within funding limits. The amended WAC came under serious criticism, and in 1989 WAC 388-100-005 was again amended to remove the city and county jail inmate exclusion. However, the inmates whose costs are at issue in this case were treated during the period of time the exclusion was in place.

As noted, the trial court ruled that because of RCW 70.48-.130 DSHS did not have authority to exclude jail inmates from eligibility for public assistance medical programs. The court held WAC 388-100-005's exclusion of inmates invalid. DSHS has not appealed that ruling. DSHS also does not argue that the two Franklin County inmates were ineligible for public assistance medical care.

DSHS now maintains that while the City and County Jails Act prevents DSHS from singling out the inmate population to exclude it from the LCP-MI, the LCP-MI has specific funding limits which the jails act cannot supersede. If legislative appropriations are insufficient, DSHS maintains,

DSHS is not permitted to spend funds it does not have. DSHS states that the limited rate structure of the LCP-MI is designed to keep the program within its appropriation.

The flaw in DSHS's reasoning is that it assumes that the discretion afforded it under RCW 74.09.700 permits it to ignore the mandatory obligation set forth in RCW 70.48.130 to reimburse cities and counties for jail inmates' medical care costs. It is true that an agency generally may not make expenditures in excess of legislative appropriations. *See* Const. art. 8, § 4 (amend. 11); RCW 43.88.130. However, DSHS does not simply argue inadequacy of funding for jail inmates; DSHS argues inadequacy of funding for all persons eligible for the LCP-MI. That is, DSHS assumes that if it has discretion to limit coverage rates generally in order to come within funding limitations, it can do so with respect to all eligible persons, including medically indigent jail inmates.

We conclude, however, that the discretion set out in RCW 74.09.700 allowing DSHS generally to set rates of payment does not override the mandatory obligation in RCW 70.48.130 to fully reimburse the County for the jail inmates' medical costs. Essentially, DSHS's argument is that the 1981 amendments and enactments repealed the language in RCW 70.48.130 requiring full reimbursement by DSHS. Repeals by implication are disfavored. *Local 497, Int'l Bhd. of Elec. Workers v. PUD 2*, 103 Wn.2d 786, 789, 698 P.2d 1056 (1985). Under the 2-pronged test for such repealer, the later act must cover the entire subject matter of the earlier legislation, be complete in itself, and be intended to supersede prior legislation on the subject; and the two acts must be so clearly inconsistent and so repugnant to each other that they cannot be reconciled. *Local 497*, at 789. This test is not satisfied here. At the least, it is clearly possible to reconcile RCW 70.48.130 and RCW 74.09 and give each a reasonable construction. While DSHS has discretion generally under RCW 74.09.700, that discretion does not extend to providing less than full reimbursement for jail inmates as required by RCW 70.48.130.

The trial court erred in ruling that reimbursement of medically indigent jail inmates' medical care costs must be limited to the rates which DSHS sets under RCW 74.09.700 for nonconfined persons.

Having examined RCW 70.48.130 and RCW 74.09, we hold that RCW 70.48.130 mandates that DSHS must fully reimburse a city or county for the medical costs of its medically indigent jail inmates, provided that the inmates are eligible for the Department's public assistance medical program. The trial court erred in ruling that DSHS only had to reimburse to the same extent as it provided coverage for nonconfined persons and in granting summary judgment in part in favor of DSHS.

As noted, the parties filed cross motions for summary judgment. Should summary judgment have been granted in favor of the County on the full reimbursement issue? As a matter of statutory construction of RCW 70.48.130, the County was entitled to judgment as a matter of law. Under RCW 70.48-.130, DSHS had to fully reimburse the County for the inmates' medical care costs.

DSHS maintains, however, that it is "undisputed that DSHS received no appropriation to cover jail inmate hospitalization costs from the Legislature." Brief of Respondent DSHS, at 25. This raises the question whether, despite the mandatory nature of RCW 70.48.130, the Legislature insufficiently funded the inmates' medical care reimbursement program and therefore DSHS was unable to provide full reimbursement. *See generally Ellensburg v. State*, 118 Wn.2d 709, 714-16, 826 P.2d 1081 (1992); *Pannell v. Thompson*, 91 Wn.2d 591, 589 P.2d 1235 (1979).

At this juncture, because we are deciding whether summary judgment should have been granted in favor of the County, we view the County as the moving party and DSHS as the nonmoving party. We engage in the same inquiry as the trial court. *Swanson v. Liquid Air Corp.*, 118

Wn.2d 512, 518, 826 P.2d 664 (1992). Summary judgment is proper if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c); *Swanson*, at 518. Facts and the reasonable inferences therefrom are considered in favor of the nonmoving party, and summary judgment should be granted in favor of the moving party only if reasonable minds could reach but one conclusion from all the evidence. *Swanson*, at 518; *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

From all the evidence, the County is entitled to summary judgment. As explained above, under the statutes, the County is entitled to full reimbursement. Contrary to DSHS's claim, this record does not establish as an undisputed fact that legislative appropriations were insufficient, nor does it even raise an issue of material fact as to whether legislative appropriations were insufficient.

In support of its claim of inadequate appropriations, DSHS cites to the Clerk's Papers, at 244-57. Nothing in the cited pages supports the claim that there was no available appropriation for reimbursement for the Franklin County Jail inmates' medical care costs in 1986.

The first item is an unsigned affidavit of the director of the Division of Medical Assistance, Department of Social and Health Services.

██ Unsigned affidavits should not be considered in ruling on summary judgment motions. *See In re Estates of Hibbard*, 118 Wn.2d 737, 741 n.7, 826 P.2d 690 (1992). In *Mason v. Clark*, 920 F.2d 493, 495 (8th Cir. 1990), the court said:

> We have no hesitation in stating that an unsigned affidavit is not sufficient evidence in support of a motion for summary judgment. *Pension Benefit Guar. Corp. v. Heppenstall Co.*, 633 F.2d 293, 300 (3d Cir. 1980). In fact, an "unsigned affidavit" is a contradiction in terms. By definition an affidavit is a "sworn statement in writing made . . . under an oath or on affirmation before . . . an authorized officer." *Webster's Third New International Dictionary* 35 (1965).

*See also Kent v. Lee,* 52 Wn. App. 576, 579, 762 P.2d 24 (1988) ("[a]n affidavit is . . . a solemn, formal asseveration, under oath, upon which others might rely").

Even if the affidavit were proper and could be considered, it would not preclude summary judgment. The director's affidavit presents DSHS's view that it had authority to decide whether to continue coverage for jail inmates, and that when DSHS was informed in 1986 that cities and counties would expand claims on behalf of jail inmates, coverage for inmates was eliminated and a 23.7 percent reduction in payments for Diagnosis Related Groups hospital payments were made to address a "deficit potential". Clerk's Papers, at 247. The affidavit also refers to bills in the 1986 and 1987 legislative session which would "clarify the responsibilities for jail inmate medical care . . .." Clerk's Papers, at 248. In DSHS's view, the affidavit continues, failure of these bills to pass indicated legislative intent in accord with DSHS's view of its discretion and authority.[4] The affidavit says absolutely nothing about appropriations available to reimburse Franklin County for the 1986 hospitalization costs.

The second item is a point of inquiry contained in the *1982* house journal regarding a senate bill. Clerk's Papers, at 249-50. It obviously says nothing about legislative appropriations for the relevant period.

The third item at the cited pages is an excerpt of testimony before the Senate Human Services and Corrections Committee on February 17, 1987. Clerk's Papers, at 251-53. The testimony relates to one of the bills referenced above. The testimony again recites DSHS's view of its discretion and the need to reduce expenditures. The testimony further states that the proposed bill contained no appropriation. The testimony also states DSHS's view that if the bill were not passed, DSHS would view nonpassage as concurrence with DSHS's view. Again, this testimony does not establish

---

[4]We refuse to speculate about the reasons for nonpassage of the bills. There are simply too many possibilities for us to reach the conclusion which DSHS has advanced.

lack of appropriations for reimbursement of the County. It is obvious that prior to its amendment of its WAC to exclude jail inmates, DSHS was providing inmate medical care coverage. It is a fair assumption it had some appropriation permitting it to provide that coverage. We reject the implication that because a proposed bill in 1987 carried no appropriation within the proposed bill itself, and that because DSHS thought it could reduce or eliminate inmate coverage, there was therefore no appropriation for inmates' hospitalization in 1986. The latter conclusion simply does not follow.

The final item relied upon for the proposition that there was no appropriation for inmates' hospitalization costs is an unsigned affidavit by the office chief of the office of analysis and medical review within the Division of Medical Assistance, Department of Social and Health Services. Clerk's Papers, at 254-57. As an unsigned affidavit, this item should not be considered. Even if it was properly considered, it would not preclude summary judgment. This affidavit recounts some of the statutory history outlined above, and contains as an exhibit a "chronology of the major changes to the Medically Indigent program . . . which occurred either at the direction of the legislature or by DSHS in the exercise of its discretion." Clerk's Papers, at 255. The chronology shows some changes in rates and coverage, but plainly does not speak to claims for jail inmates, says absolutely nothing about legislative appropriations, and does not indicate that in 1986 there were insufficient appropriations for DSHS to reimburse the County for the inmates' costs.

In sum, the materials relied upon by DSHS as showing that there were no legislative appropriations for inmate hospitalization do not do so, nor do they raise a genuine issue of material fact on the matter.[5] Once the County estab-

---

[5]At oral argument counsel for DSHS said that in the 1990 supplemental budget there was a line item appropriation to cover medical costs of jail inmates at DSHS's rate. Materials were later submitted upon this court's request for further information. The materials submitted, however, do not address any appropriations relevant to 1986 and the question whether DSHS then had funds available but chose not to provide coverage for jail inmates. In fact, the supplemental budget, reported in Laws of 1990, 1st Ex. Sess., ch. 16, does not

lished an absence of material fact as to whether it was entitled to full reimbursement under RCW 70.48.130, the burden shifted to DSHS as the nonmoving party to produce evidence of the inadequacy of appropriations in order to avoid summary judgment requiring full reimbursement in favor of the County. *See generally Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989). DSHS failed to submit any evidence about appropriations and claims for inmates which would raise a genuine material issue of fact as to whether appropriations were sufficient in 1986 to reimburse the County for the hospitalization costs. At most, the materials submitted show concern about a risk of total expenditures in excess of appropriations and DSHS's view of its own discretion, but constitute no evidence of lack of legislative appropriations for jail inmates' medical care in 1986.

We therefore conclude that the County is entitled to summary judgment. DSHS must fully reimburse the County for the two jail inmates' medical care costs. We note that the parties evidently stipulated below that reimbursement due from DSHS could be paid directly to the health care provider. Although RCW 70.48.130 requires reimbursement to the governing unit, we perceive no reason why the parties may not stipulate to direct payment, keeping in mind that it is the County's primary obligation to pay the Hospital.

Finally, we address the County's argument that the trial court erroneously imposed postjudgment interest on the judgment which it must pay the Hospital.

The general rule is that as a matter of sovereign immunity, the "state cannot, without its consent, be held to

---

contain such a line item. DSHS relies upon Legislative Budget Notes, which allocate something over $1.5 million for "Medical for Jail Inmates" for the *1989-91* biennium. Manifestly the notes do not concern 1986. Further, nothing indicates the funds are to be expended at DSHS's rate. Also, comment 4 states that "Medical for Jail Inmates [i]ncludes funding for the cost of a settlement of litigation to provide coverage for city and county jail inmates under the department's Medically Indigent (MI) program, effective September 1, 1989." That comment is ambiguous, and may suggest, as the County urges, that the Legislature was in fact providing funding so that DSHS could fully reimburse for inmates' medical care costs such as those at issue here.

interest on its debts.' " *Architectural Woods, Inc. v. State*, 92 Wn.2d 521, 524, 598 P.2d 1372 (1979) (quoting *Spier v. Department of Labor & Indus.*, 176 Wash. 374, 376-77, 29 P.2d 679 (1934)). This rule is followed despite the fact that RCW 4.56.110 does not expressly exempt the State or its political subdivisions from its operation. Counties, like cities, are political subdivisions of the State to which the rule applies. *See Silvernail v. County of Pierce*, 80 Wn.2d 173, 492 P.2d 1024 (1972). Here, there is no indication of any waiver, *i.e.*, there is nothing to indicate consent to any obligation to pay postjudgment interest. The Hospital points to no statute or contract authorizing such interest, nor has the Hospital attempted to show implied consent to liability for such interest. *See Architectural Woods*, at 527, 529-30.

We reverse the trial court's ruling imposing postjudgment interest on the judgment which the County must pay the Hospital.

Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.

UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

DORE, C.J. (concurring in part, dissenting in part) — I concur with the majority on two issues: First, I agree that the trial court properly granted summary judgment on the issue that the County is primarily responsible for an inmate's medical costs. Second, I agree that postjudgment interest cannot be imposed on a sovereign without consent. I dissent, however, on the issue of the Department of Social and Health Services' (DSHS) obligation to reimburse the County. The trial court properly granted summary judgment on DSHS's claim that it need only reimburse the County for the medical care costs to the extent it would provide coverage for nonconfined medically indigent persons. It follows that the County was not entitled to summary judgment for full reimbursement from DSHS.

On the contrary, to say that DSHS must fully reimburse the County for the medical costs of its prisoners is to have the State write a blank check for the health care of the County's prisoners. The following brief overview of the law and the applicable health care programs will clarify the issues.

RCW 70.48.130 mandates that the County is primarily responsible for paying the medical costs of its prisoners. That statute further mandates that DSHS reimburse the County "for the cost thereof" where, and only where, "the confined person requires treatment for which such person is eligible under the department of social and health services' public assistance medical program."

DSHS administers three public assistance medical programs. The first program falls under RCW 74.09.510. As amended in 1970, that program provided full medical coverage to inmates. In 1981, however, the Legislature modified RCW 74.09.510 to fall under the Federal Medicaid program which excludes inmates from coverage. The 1981 modification left only the second and third public assistance medical programs. The second program is controlled by RCW 74.04-.005 and provides care for only the unemployed and recipients of drug and alcohol addiction services. The third and final program, falling under RCW 74.09.700, is the Limited Casualty Program for the Medically Indigent (LCPMI).

LCP-MI is the program of last resort for Washington's medically indigent. The Legislature created LCP-MI at the same time that it modified RCW 74.09.510 to fall under the Federal Medicaid program. The Legislature intended LCP-MI to be a spillover program to care for medically indigent persons who did not qualify for Federal Medicaid. The program has several distinct characteristics. First, it operates on very limited funds, and because of this, LCP-MI is only capable of covering a portion of a participant's medical costs. Second, because of the limited funds, the Legislature afforded DSHS total authority to set the amount, scope, and duration of medical coverage under LCP-MI. Pursuant to that author-

ity, DSHS instituted a single rate structure designed to limit program spending "to the extent of available funds" as RCW 74.09.700 requires.

Returning to RCW 70.48.130, the majority postulates that when the Legislature enacted that statute in 1977, it used the term "cost thereof" to mean full cost. If this were the case, the Legislature clearly was referring to RCW 74.09-.510, the first of the three programs described above. That was the only program providing full coverage for inmates' medical costs at that time. Although that program allotted full coverage until 1981, today neither RCW 74.09.510 nor any other program can fully reimburse the County for prisoner medical costs.

The only possible source of any reimbursement is LCP-MI, and the Legislature probably never intended that program to provide full coverage for the medical care of county prisoners. If the Legislature had intended such a large additional expenditure as full reimbursement for prisoner medical costs it would have appropriated funds earmarked for that purpose or it would have designated such coverage in the enabling legislation. No such appropriation took place. In fact, the Legislature did not designate any appropriations whatsoever for LCP-MI, much less for the medical care of medically indigent prisoners. Rather, the Legislature simply granted DSHS the authority to allocate funds out of its general appropriation to LCP-MI. Moreover, although RCW 74.09.700 lists certain medically needy groups covered under LCP-MI, it neither includes nor excludes prisoners from coverage.

Clearly, the majority's application of RCW 70.48.130 to LCP-MI creates a statutory conflict. In resolving statutory conflicts, the court's role is to defer to legislative intent while attempting to give effect to each statute, harmonizing them with each other. *Draper Mach. Works, Inc. v. Department of Natural Resources*, 117 Wn.2d 306, 311, 815 P.2d 770 (1991). The majority opinion, however, gives full effect to RCW 70.48.130 while gutting the LCP-MI program.

The majority reconciles these two conflicting statutes by modifying LCP-MI to create full coverage singularly for the medical costs of county prisoners. The majority then dispenses with DSHS authority over the scope of LCP-MI by simply rationalizing that DSHS has that authority except with regard to prison inmates. Finally, the majority ignores the enabling legislation's fundamental requirement that LCP-MI spending not exceed "the extent of available funds". The majority's rewriting of LCP-MI ignores at least these mandates of RCW 74.09.700. In doing so, the majority creates a public assistance medical program that grants inmates full state medical coverage despite very limited funds and limited coverage. Nothing in the facts suggests that the Legislature intended this to happen.

Rather, the facts persuasively suggest that if the Legislature had intended more reimbursement than allotted by LCP-MI's rate schedule, then it would not have made reimbursement dependent upon the terms of the public assistance medical program. As noted, the Legislature did not designate any appropriations whatsoever for LCP-MI, much less for the medical care of medically indigent prisoners. Rather, the Legislature granted DSHS authority to set the amount, scope and duration of LCP-MI "to the extent of available funds". DSHS has used this authority to implement a rate schedule which provides partial coverage only. Charity care has historically been reimbursed at a rate less than customary fee schedules, and this court has viewed discounted rate schedules as a legislative "fact of life". *Pannell v. Thompson*, 91 Wn.2d 591, 589 P.2d 1235 (1979). The discounted rate schedule was authorized by the Legislature to help DSHS meet budgetary constraints. Meeting these constraints has become especially important since the Legislature enacted the budget and accounting act (Budget Act), RCW 43.88.260-.300. The Budget Act imposes fines on agencies that spend more than they are appropriated. The legislative history and circumstances, thus, suggest that the Legislature did not intend RCW 74.09.700 to exist as the majority construes it.

Like the legislative circumstances leading up to LCP-MI, public policy does not support the majority's interpretation of the issue. As noted, DSHS cannot afford fines under the Budget Act. If fined, LCP-MI would be the first program to experience DSHS cuts because its funding is based on available funds. In turn, if forced to maintain LCP-MI in order to pay the medical costs of prisoners, DSHS would have no choice but to cut coverage for other needy persons under LCP-MI or to cut back on other DSHS services. The program of last resort for Washington's most vulnerable citizens would become a program for medically indigent prisoners only. Thus, any interpretation of RCW 70.48.130 requiring full reimbursement jeopardizes the LCP-MI program as well as threatens the viability of other delicately funded DSHS programs. Still, an alternative exists.

The majority could have avoided crippling LCP-MI by holding that RCW 70.48.130 requires DSHS to reimburse the County for the "full costs" for which it is accountable under the limited coverage of LCP-MI. This is a more plausible reading of the statute than the majority's. First, it is consistent with the language of the statute. Second, it justifies partial reimbursement and maintains the integrity of LCP-MI. Third, it treats confined and nonconfined medically indigent persons equally. Fourth, it maintains DSHS's authority to govern the scope and coverage of the LCP-MI program. Fifth, it arguably gives full effect to both statutes. Sixth and finally, it encourages the County to administer its courts and prison system prudently, keeping medical costs in check.

## CONCLUSION

In sum, I disagree with the majority on the issue of DSHS's obligation to reimburse the County. I hold that the trial court was correct, and that DSHS is requested only to reimburse the County to the dollar amount it would provide coverage for nonconfined medically indigent persons. The Legislature simply did not appropriate the funds necessary to fully reimburse counties for the medical costs of their

prisoners. Besides essentially rewriting the law, the majority's rationalization flirts with the financial destruction of the LCP-MI program and jeopardizes the delicate framework of other DSHS services. I dissent.