[No. 19325-0-III. Division Three. April 19, 2001.]

MAX W. McCLINTICK, ET AL., *Appellants*, v. TIMBER PRODUCTS MANUFACTURERS, INC., ET AL., *Respondents*.

916

*John A. Bardelli*, for appellants.
*Keller W. Allen*, for respondents.

KATO, J. — Max W. McClintick appeals the summary dismissal of his wrongful termination claims against Timber Products Manufacturers, Inc. (TPM). He contends he presented evidence he was not an at-will employee. He also contends the court erred in concluding federal law preempts his claim that he was fired for pursuing an investigation into practices of the employer's trust and 401(k) retirement plan. We affirm.

TPM is an association of dues-paying companies in the timber and wood-products industries. It provides human resources advice and consulting services; safety and risk management advice; education and training; newsletters and other publications; and life, dental, vision, and retirement benefits to member companies' employees. TPM hired Mr. McClintick as its general manager in 1993. A letter offering Mr. McClintick the job stated he would "hold office at the pleasure of the Board of Directors." Clerk's Papers (CP) at 255.

By 1997, Mr. McClintick's annual salary had grown from $70,000 to $100,000 (plus performance bonuses), and several members of the board commended him for his efforts. Mr. McClintick supervised the publication of "Essentials of Hiring and Firing," a guidebook for TPM's member-employers. CP at 257. The guidebook contains general employment advice and various sample documents. One section warns that language in an employee handbook or manual may modify the general rule of at-will employment. A sample

employment letter expressly provides for at-will employment. The guidebook also contains the following advice regarding progressive discipline:

> Most companies impose discipline in a progressive manner — each time employees are disciplined, they receive an increasingly severe penalty. With the exception of very serious offenses, an employee is rarely discharged on the first offense. The sequence of penalties generally moves from verbal warning to written warning, suspension, and ultimately to discharge. Over the years it has been proven that Progressive Discipline is one of the best defenses a supervisor and the company can have against a wrongful discharge suit. If supervisors follow progressive discipline properly, it's unlikely that a termination decision will be challenged. And even if it is, the company will be able to point to a complete, objective record of every violation that has occurred and specific steps taken in an effort to correct the situation. When discharge is the last step in a progressive discipline process, it is seldom arbitrary or unjust.

CP at 329.

Mr. McClintick alleges that members of TPM's board of directors and its executive committee instructed him to implement this principle of progressive discipline. He also alleges progressive discipline became TPM's policy, which he followed in firing two employees.

However, TPM's employee policy manual, which was revised in 1996, contained the following provision:

### EMPLOYMENT IS AT-WILL

THIS MANUAL, AND THE INFORMATION CONTAINED IN IT, IS NOT A GUARANTEE OF CONTINUED EMPLOYMENT OR BENEFIT PLAN CONTINUATION. NOTHING IN THIS MANUAL OR ANY OTHER COMMUNICATION, EITHER WRITTEN OR ORAL MADE AT THE TIME OF HIRE OR DURING THE COURSE OF EMPLOYMENT BY ANY REPRESENTATIVE OF TPM SHALL CREATE OR IS INTENDED TO CREATE, A CONTRACT OF EMPLOYMENT EXPRESSED OR IMPLIED. ACCORDINGLY, EITHER YOU OR TPM CAN TERMINATE THE RELATIONSHIP AT WILL,

WITH OR WITHOUT CAUSE, AT ANY TIME. ONLY THE GENERAL MANAGER OF TPM HAS THE AUTHORITY TO ENTER INTO AN AGREEMENT WITH ANYONE FOR ANY REASON OTHER THAN ONE FOR AT-WILL EMPLOYMENT. ANY SUCH AGREEMENT MUST BE IN WRITING AND SIGNED BY THE GENERAL MANAGER.

CP at 370. Mr. McClintick concedes there is no document modifying this employment-at-will provision either for himself or for any other TPM employee.

During his employment at TPM, Mr. McClintick became concerned that the TPM Trust was not in compliance with federal law. Over the objections of two trustees who believed he was too aggressive, the TPM Trust documents were rewritten, and a payroll audit was being conducted to determine whether some persons were participating illegally. Mr. McClintick also concluded that TPM's 401(k) retirement plan needed to be audited and brought into compliance with state and federal law. The chairperson of the 401(k) committee vigorously disagreed, and the board of directors rejected the audit in the spring of 1997.

Shortly after that, the board's executive committee fired Mr. McClintick without warning. The committee notified the full board of directors of the firing by circulating a memo asking board members to vote to approve a severance package. A majority of the board approved.

Mr. McClintick sued TPM, the TPM Trust, and the members of the executive committee, alleging: (1) wrongful discharge; (2) breach of an implied covenant of good faith and fair dealing; (3) discharge in violation of an implied public policy favoring compliance with state and federal law regarding trust and 401(k) accounts; (4 & 5) age discrimination in violation of state and federal law; (6) deprivation of a liberty interest; and (7) negligent and intentional infliction of emotional distress.

On the defendants' motion for summary judgment, the court dismissed all of Mr. McClintick's claims. His appeal challenges the dismissal of claims (1) and (3).

In reviewing a summary judgment order, our inquiry is

the same as the superior court's. *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 451, 842 P.2d 956 (1993). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The burden is on the moving party to establish its right to judgment as a matter of law, and facts and reasonable inferences from the facts are considered in favor of the nonmoving party. *Our Lady of Lourdes*, 120 Wn.2d at 452.

 Mr. McClintick first contends the court erred in concluding he failed to establish TPM had modified the at-will employment relationship by instituting a policy of progressive discipline. Employment relationships in Washington generally are terminable at will by either party. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223, 685 P.2d 1081 (1984). However, this rule does not apply if an employee manual or handbook creates an express contract to terminate employees only for cause. *Id.* 228-29. "Under this approach the requisites of contract formation, offer, acceptance and consideration are necessary predicates to establishing that policies in an employment manual are part of the employees' original employment contract or part of the employment contract as modified by the parties." *Id.* at 228. In a more recent case, the Supreme Court noted that to be considered an express contract, an employee handbook must identify " 'the subject matter of the contract, the parties, the promise, the terms and conditions, and (in some but not all jurisdictions) the price or consideration.' " *DePhillips v. Zolt Constr. Co.*, 136 Wn.2d 26, 31, 959 P.2d 1104 (1998) (quoting *Family Med. Bldg., Inc. v. Dep't of Soc. & Health Servs.*, 104 Wn.2d 105, 108, 702 P.2d 459 (1985)). In *DePhillips*, 136 Wn.2d at 31, the handbook was not an express contract because it did not "name or identify plaintiff, nor [did] it identify his job or job responsibilities or his work hours."

Mr. McClintick appears to argue in part that TPM adopted a policy of firing employees only after following the progressive discipline procedures described in the "Essentials of Hiring and Firing" guidebook, and this document became an express contract. There is no evidence to support this argument. Mr. McClintick has failed to provide any facts suggesting that he (or the employees generally) or TPM offered or accepted such a contract. The "Essentials of Hiring and Firing" guidebook did not name or identify any employees as parties to any agreement, nor did it identify their work responsibilities. The facts clearly show that the guidebook was not a handbook or manual for TPM employees at all, but rather was provided to member companies for their use in forming relationships with *their own* employees.

The only *express* provisions regarding Mr. McClintick's employment relationship directly refute his argument. TPM's employment letter to him and the employee policy manual both unambiguously provided that the job was terminable at will.

■ Mr. McClintick relies primarily on a second exception to the at-will rule. Independent of the pure contractual analysis, an employer may create an *implied* contract that alters the at-will employment relationship. *Thompson*, 102 Wn.2d at 229. To prevail on a claim for wrongful discharge under this theory, an employee must establish that (1) the employer created an atmosphere of job security and fair treatment with "promises of specific treatment in specific situations"; and (2) the employee justifiably relied on those promises. *Id.* at 230 (emphasis omitted); *see Hibbert v. Centennial Villas, Inc.*, 56 Wn. App. 889, 892, 786 P.2d 309 (1990).

■ Mr. McClintick apparently contends the "Essentials of Hiring and Firing" guidebook, combined with some board members' instructions to apply the progressive discipline policy to TPM's employees, was a promise of specific treatment in specific situations. The argument fails for at least five reasons. First, there is no evidence the board (or even

individual *members*) promised Mr. McClintick that it would apply the progressive discipline policy in TPM's relationship to him. Second, oral promises alone "are not sufficient to create an issue of material fact as to the existence of an enforceable promise of continued employment in a specific job." *Lawson v. Boeing Co.*, 58 Wn. App. 261, 264-65, 792 P.2d 545 (1990), *review denied*, 116 Wn.2d 1021 (1991).

Third, the "Essentials of Hiring and Firing" guidebook clearly is not an expression of TPM's employment policy. Its endorsement of the practice of progressive discipline directly contradicts its suggestion that employers include "a strong employment 'At-Will' statement in their employee handbook[s] and on their employment application form[s]." CP at 327. Fourth, the "Essentials of Hiring and Firing" guidebook does not amount to a promise of specific treatment in specific situations. It contains no terms such as "shall," "will," or "must" that indicate the practice is mandatory. *See Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613-14, 762 P.2d 1143 (1988). Even if it were applicable to TPM's employees, the guidebook was merely advisory.

Fifth, both Mr. McClintick's employment letter and the TPM policy manual (which was revised while Mr. McClintick was general manager) unambiguously provided that the employment was at will. As a result, Mr. McClintick has failed to establish that his reliance on its progressive discipline language was reasonable. *See Raymond v. Pac. Chem.*, 98 Wn. App. 739, 747-48, 992 P.2d 517 (1999).

Mr. McClintick relies on two cases that are distinguishable. In *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 105-06, 864 P.2d 937 (1994), the employer's guide for managers contained express, mandatory policy provisions regarding the hiring and firing process. The court held this guide created a genuine factual question as to whether the employer had created an expectation of job security. *Id.* Here, there were no such express, mandatory provisions. In *Payne v. Sunnyside Community Hospital*, 78 Wn. App. 34, 35-37, 894 P.2d 1379, *review denied*, 128 Wn.2d 1002

(1995), the employer's policy manual disclaimed any intent to change the at-will employment status of its employees but nevertheless set forth mandatory progressive discipline procedures. The court held these inconsistencies, coupled with the employer's oral statements that progressive discipline was a mandatory policy, created a genuine factual question to defeat a motion for summary judgment. *Id.* at 42-43. Here, even if the "Essentials of Hiring and Firing" guidebook were applicable to TPM's employees, neither it nor TPM's board members *required* progressive discipline procedures.

The court did not err in concluding Mr. McClintick failed to present evidence supporting his claim that TPM had modified the at-will employment relationship.

■ Mr. McClintick also has assigned error to the court's dismissal of his claim that TPM violated its corporate bylaws. Although he sets forth this issue in his brief's preliminary sections, he has presented no supporting argument. We therefore will not address it. *See Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 ("[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration"), *review denied*, 136 Wn.2d 1015 (1998).

Finally, Mr. McClintick contends the court erred in concluding federal law preempted his claim that the termination violated public policy. In Washington, an employee discharged in contravention of "a clear mandate of public policy" has a tort claim for wrongful discharge. *Thompson*, 102 Wn.2d at 232. Claims have been recognized in four general areas:

(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing.

*Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 936, 913

P.2d 377 (1996); *see Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989).

Mr. McClintick alleges he was fired for reporting or pursuing investigations into alleged violations of laws related to administration of TPM's 401(k) retirement plan and the TPM Trust. The superior court concluded this claim is preempted by the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). In this context, "[t]he term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

In *Puget Sound Electrical Workers Health & Welfare Trust Fund v. Merit Co.*, 123 Wn.2d 565, 870 P.2d 960 (1994), the issue was whether a state law related to ERISA under § 1144(a). The Washington Supreme Court applied the test articulated by the United States Supreme Court in *Shaw v. Delta Air Lines*, 463 U.S. 85, 97, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983), which held that a law relates to a covered plan "if it has a connection with or reference to such a plan."[1] *See Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 121 S. Ct. 1322, 149 L. Ed. 2d 264 (2001); *Int'l Bhd. of Elec. Workers, Local Union No. 46 v. Trig Elec. Constr. Co.*, 142 Wn.2d 431, 442, 13 P.3d 622 (2000), *cert. denied*, 121 S. Ct. 1672 (2001).

After *Merit*, the United States Supreme Court noted that the ERISA preemption provision is "clearly expansive." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995). However, the Court held that state laws with only a " 'tenuous, remote, or peripheral' connection with covered plans" are not preempted. *Id.* at 661 (quoting

---

[1] The Washington Supreme Court recently upheld *Merit* (which applied the *Shaw* rule). *Int'l Bhd. of Elec. Workers, Local Union No. 46 v. Trig Elec. Constr. Co.*, 142 Wn.2d 431, 442, 13 P.3d 622 (2000), *cert. denied*, 121 S. Ct. 1672 (2001).

*District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 n.1, 113 S. Ct. 580, 121 L. Ed. 2d 513 (1992)). Under *Travelers*, preemption issues must be decided by examining the "objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive," as well as the nature of the state law's effect on ERISA plans. *Travelers*, 514 U.S. at 656; *Egelhoff*, 121 S. Ct. at 1327.

Under this rule, ERISA expressly demonstrates a congressional intent to supplant state law in the area of whistleblower protection. The statute expressly provides:

It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter . . . . The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140.

ERISA provides for a civil action by a plan participant, beneficiary, or fiduciary to enjoin violative practices or to obtain other equitable relief. 29 U.S.C. § 1132(a)(3). Congress undeniably intended to make whistleblower protection a part of ERISA. The United States Supreme Court agrees. In *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990), the Court (applying the *Shaw* rule) held ERISA preempted a common law state claim that an employee was discharged to prevent him from accruing benefits under a covered plan. The Court first held the claim related to a covered plan:

Here, the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law. As a result, this cause of action relates not merely to pension benefits, but to the essence of the pension plan itself.

*Id*. at 139-40 (emphasis omitted).

The Court further concluded that, even if there were no express preemption, the common law claim would be preempted because it directly conflicted with 29 U.S.C. § 1140.

*Ingersoll-Rand*, 498 U.S. at 142.

Several other federal and state authorities agree that wrongful termination claims based on state statutory or common law protecting fiduciaries or whistleblowers, in circumstances similar to those Mr. McClintick alleges here, are preempted by ERISA. *See, e.g., Hashimoto v. Bank of Haw.*, 999 F.2d 408 (9th Cir. 1993); *Authier v. Ginsberg*, 757 F.2d 796 (6th Cir.), *cert. denied*, 474 U.S. 888 (1985); *McLean v. Carlson Cos.*, 777 F. Supp. 1480 (D. Minn. 1991); *Maxfield v. Cent. States, SE & SW Areas Health, Welfare & Pension Funds*, 559 F. Supp. 158 (N.D. Ill. 1982); *Andrews v. Alaska Operating Eng'rs-Employers Training Trust Fund*, 871 P.2d 1142 (Alaska), *cert. denied*, 513 U.S. 874 (1994).

The court did not err in dismissing Mr. McClintick's claim that he was unlawfully terminated in violation of public policy. His remedy, if any, is under ERISA.

The order granting summary judgment is affirmed.

SWEENEY and SCHULTHEIS, JJ., concur.