IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34327-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CARL R. MOORE JR., | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Carl Moore appeals his convictions for possession of a controlled substance (methamphetamine), arguing that the trial court erred when it failed to suppress evidence discovered in a search incident to his second warrantless arrest for a single crime and impermissibly commented on the evidence, his trial lawyer provided ineffective assistance of counsel by failing to object to irrelevant and prejudicial testimony, and the trial court imposed discretionary legal financial obligations (LFOs)

No. 34327-8-III
*State v. Moore*

without inquiring into Mr. Moore's current or future ability to pay.[1] The only possible

error was not preserved. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

On June 4, 2015, detectives with the Quad Cities Drug Task Force attempted to

locate Shannon Grove, who had been cooperating with law enforcement as a controlled

buyer of narcotics but had "[gone] sideways" on the task force; Detective Jonathan Coe, a

task force member, described her as "dealing behind our backs" in violation of her

contract. Report of Proceedings (RP) at 8. Knowing from Ms. Grove's prior disclosures

that she obtained methamphetamine from out-of-town suppliers at Gary Kemper's home

in Clarkston Heights, detectives surveilled the area of his home in hopes of sighting her.

As expected, Ms. Grove was observed leaving Mr. Kemper's home in the

passenger seat of a red pickup truck driven by Carl Moore. Officers followed the truck

and initiated a stop. While another officer spoke with Ms. Grove, Detective Coe spoke

with Mr. Moore.

The detective's knowledge of Mr. Moore's background combined with his

presence at the Kemper home and accompaniment by Ms. Grove led Detective Coe to

---

[1] In a statement of additional grounds for review, Mr. Moore makes additional
arguments that the State's only witness testified falsely at trial in several instances. We
reject those challenges, since "[c]redibility determinations are for the trier of fact and
cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850
(1990).

2

suspect Mr. Moore was using or selling methamphetamine. After advising him of his

*Miranda*[2] rights, Detective Coe questioned Mr. Moore, asking if he had any narcotics.

Mr. Moore said he did not, but his demeanor suggested otherwise to the detective, who

told Mr. Moore, "Look, Carl, got drugs on you [sic], I can work with you, we can help

take care of this, so why don't you just take 'em out." RP at 88. Mr. Moore did,

emptying his pockets of a "baggie" containing three smaller baggies of

methamphetamine and a glass smoking pipe. In response to Detective Coe's proposal

that Mr. Moore ameliorate charges by cooperating with the task force, Mr. Moore

answered that he would. The detective put Mr. Moore in handcuffs, placed him under

arrest for the drug possession, and had other officers transport him to the jail, telling Mr.

Moore, "I'll get back to you." RP at 22.

Moments after officers left for the jail with Mr. Moore, Detective Coe was told

that a robbery suspect who had also been at the Kemper home was attempting to elude

officers who had signaled him to pull him over. The detective got in his own car to assist

in the pursuit. After the pursuit escalated into an officer-involved shooting, Detective

Coe and others were sequestered indefinitely for an investigation. Knowing it would be

difficult to timely complete a probable cause affidavit in support of Mr. Moore's arrest

and detention, Detective Coe called the jail and spoke with Mr. Moore. He told Mr.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

Moore he would be released without charges in exchange for cooperating with law enforcement, and told Mr. Moore to call him after his release.

Mr. Moore did not thereafter call Detective Coe, and the detective's calls to the cell phone number he had been given by Mr. Moore were not answered. Because Mr. Moore was transient, Detective Coe was unable to locate him.

Then, on October 7, 2015, while Detective Coe was surveilling another house known to be a narcotics trafficking site, he saw Mr. Moore arrive at the house, enter, and leave about 15 minutes later. After a deputy in a marked car pulled over Mr. Moore's pickup, Detective Coe arrived, pointed out to Mr. Moore that he had never made contact or done anything to cooperate, and stated, "I'm going to arrest you for the drugs that you had." RP at 31. During a search incident to arrest, the detective found narcotics in Mr. Moore's pocket. Detective Coe then completed probable cause reports for both arrests.

The State charged Mr. Moore with two counts of possession of methamphetamine, one each for the substances discovered in June and October. In a pretrial motion to suppress, Mr. Moore argued that the information available to task force members at the time of the June 4 stop "fail[ed] to give rise to a reasonable suspicion of specific criminal activity on the part of either Mr. Moore or his passenger" so, "the stop of Mr. Moore's vehicle was unlawful and all fruits of the unlawful stop must be suppressed." Clerk's Papers (CP) at 32-33. He argued that the October stop "constitutes fruit of the poisonous tree, as it is the un-attenuated byproduct of the initial unlawful stop on June 4." CP at 33.

4

The trial court denied the suppression motion, concluding that officers had reasonable suspicion on June 4 that the occupants of Mr. Moore's pickup truck were involved in illegal drug activities. It concluded that the controlled substances seized on June 4 and October 7 were, respectively, the result of a lawful investigative detention and of a lawful search incident to arrest.

Following a one-day trial at which Detective Coe was the only witness, the jury found Mr. Moore guilty on both counts. The baggies alleged to be those obtained from Mr. Moore in June and October and lab reports identifying their contents as methamphetamine had been offered by the State and admitted without objection.

The trial court sentenced Mr. Moore to eight months for each count, to run concurrently, and imposed $4,770 in LFOs. While the judgment and sentence contained a boilerplate finding of Mr. Moore's ability to pay the LFOs, the trial court did not inquire into ability to pay on the record. Mr. Moore did not object. He now appeals.

ANALYSIS

*Violation of Fourth Amendment and CrR 3.2.1*

Mr. Moore first argues that the evidence obtained during the October arrest should have been suppressed because re-arresting Mr. Moore on the same evidence that supported his June arrest was unconstitutional under the Fourth Amendment to the United States Constitution without first obtaining a warrant. His reasoning is this:

- An arrest requires a warrant or probable cause.

5

- Where a warrantless arrest is made, CrR 3.2.1(a) provides, consistent with the Fourth Amendment, that "[a] person who is arrested shall have a judicial determination of probable cause no later than 48 hours following the person's arrest, unless probable cause has been determined prior to such arrest."

- There was no judicial determination of probable cause within 48 hours following Mr. Moore's warrantless arrest on June 4.

- In accordance with the reasoning of *State v. Watkins*, 399 So. 2d 153, 154 (La. 1981) and *United States v. Holmes*, 452 F.2d 249, 260 (7th Cir. 1971), we should hold that once the 48-hour time frame for a judicial determination of probable cause is missed, any arrest thereafter requires a warrant—lest police continually re-arrest individuals on the same evidence without the protection against unreasonable police interference provided by a neutral magistrate.

Mr. Moore admits that no Washington case directly supports his challenge.[3] He contends this argument was sufficiently raised below by defense counsel's claim that the October stop had no legal basis. Alternatively, he argues that it was ineffective assistance of counsel not to have made this argument in support of suppression.

This argument was not sufficiently raised in the trial court. Neither in his

---

[3] He characterizes *State v. Bradford*, 95 Wn. App. 935, 978 P.2d 534 (1999), as indirectly providing support by considering suppression as a remedy for a violation of CrRLJ 3.2.1. But in that case, the violation of the rule was one circumstance considered in determining whether the defendant's confession to a crime following a too-long detention was involuntary. This court concluded that while it did not condone the "unnecessary and unwarranted delay" in the preliminary appearance, the delay was "but one of the factors to be taken into consideration in determining whether [the] confession was voluntary for [the] purposes of the Fifth Amendment." *Id.* at 949. After reviewing the factors, this court found the confession was voluntary. *Id.* It was the possible involuntariness of the confession that would have supported reversal, not the rule violation.

6

memorandum in support of suppression nor at the hearing did defense counsel mention

CrR 3.2.1, or the two cases whose reasoning Mr. Moore now asks us to embrace, or, for

that matter, any Fourth Amendment jurisprudence requiring judicial determination of

probable cause following a warrantless arrest.

RAP 2.5(a) states the general rule for appellate disposition of issues not raised in

the trial court: appellate courts will not entertain them. *State v. Guzman Nunez*, 160 Wn.

App. 150, 157, 248 P.3d 103 (2011) (citing *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d

492 (1988)), *aff'd*, 174 Wn.2d 707, 285 P.3d 21 (2012). This rule exists to afford the trial

court an opportunity to correct errors as they are raised, thereby preserving the use of

judicial resources. *Scott*, 110 Wn.2d at 685; *Smith v. Shannon*, 100 Wn.2d 26, 37, 666

P.2d 351 (1983).

Mr. Moore argues that if the error was not preserved, the conviction is nonetheless

reversible on the basis of ineffective assistance of counsel. Effective assistance of

counsel is guaranteed by both the federal and state constitutions. U.S. CONST. amend. VI;

WASH. CONST. art. I, § 22; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052,

80 L. Ed. 2d 674 (1984); *State v. Mierz*, 127 Wn.2d 460, 471, 901 P.2d 286 (1995). To

demonstrate ineffective assistance of counsel, a defendant must show two things: "(1)

defense counsel's representation was deficient, i.e., it fell below an objective standard of

reasonableness based on consideration of all the circumstances; and (2) defense counsel's

deficient representation prejudiced the defendant, i.e., there is a reasonable probability

7

that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). When a claim can be disposed of on one ground, this court need not consider both. *Strickland*, 466 U.S. at 697.

Washington courts strongly presume counsel's representation was effective. *McFarland*, 127 Wn.2d at 335. A claim of ineffective assistance of counsel can be raised for the first time on appeal. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

To determine whether trial counsel's failure to raise this issue was deficient performance, we consider whether the warrantless October arrest was arguably improper. Mr. Moore's argument is essentially that the probable cause supporting one arrest cannot constitutionally support re-arrest—instead, an arrest warrant must be obtained.

"To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the [United States Supreme] Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible." *Gerstein v. Pugh*, 420 U.S. 103, 112, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). The Fourth Amendment requirement of a judicial determination of probable cause is "a prerequisite to *extended restraint of liberty following arrest*," however, not to the arrest itself. *Id.* at 114 (emphasis added). Despite the preference for use of arrest warrants when feasible, "[T]he Court . . . has never invalidated an arrest supported by probable cause solely

8

because the officers failed to secure a warrant." *Id.* at 113 (citations omitted). Rather, "[T]he Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention," *id.* at 126, and as "a condition for any significant pretrial restraint of liberty." *Id.* at 125. "[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*" *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991).

In Washington, the requirement for a prompt judicial determination of probable cause is codified in CrR 3.2.1(a). *See Harrison Mem'l Hosp. v. Kitsap County*, 103 Wn.2d 887, 891, 700 P.2d 732 (1985) (noting CrR 3.2A[4] "was designed to protect a prisoner's constitutional privileges"). Consistent with the Fourth Amendment's protection against the serious consequences of prolonged detention, CrR 3.2.1 provides that at the time of the preliminary appearance of a defendant who was subjected to a warrantless arrest, the court must proceed to determine probable cause if bail or other conditions to release are ordered. CrR 3.2.1(b), (e)(2). CrR 3.2 provides that "[i]f the court does not find, or a court has not previously found, probable cause, the accused shall be released without conditions."

---

[4] Former CrR 3.2A (1992) was renumbered as CrR 3.2.1(a)-(b) effective April 3, 2001.

9

Mr. Moore was released without conditions shortly following his June arrest. He was arrested "early in the morning." RP at 109. He "was almost immediately released" because Detective Coe knew he would be unable to complete a probable cause report due to the investigation of the officer-involved shooting. RP at 120. The exact amount of time Mr. Moore was detained that day is unknown, but it appears to have been only a few hours.

Mr. Moore was re-arrested at an unknown time on October 7. On October 8, at 9:12,[5] a bond hearing was held and Mr. Moore's bail was set at $25,000. Because the court denied release without bail, it evidently determined that probable cause existed. It appears Mr. Moore was held for less than 48 hours before receiving his constitutionally guaranteed hearing: several hours in June and perhaps 24 hours in October. There is no discernable error.

The two non-Washington decisions Mr. Moore urges us to find persuasive are distinguishable. In *Watkins*, a pre-*McLaughlin* decision, the defendant was ordered released after he was detained for more than 72 hours following a warrantless arrest without going before a neutral magistrate. *Watkins*, 399 So. 2d at 154. Moments after his release, he was re-arrested without a warrant and without a determination of probable

---

[5] Presumably 9:12 a.m., although the criminal minutes prepared by the district court do not specify. *See Contact District Court*, ASOTIN COUNTY, http://www.co.asotin.wa.us/district-court/contact/ [https://perma.cc/EG3T-KULX] (listing hours for Asotin County District Court as 8:00 a.m. to 5:00 p.m.).

10

cause, and was denied release. *Id.* at 155. The Louisiana Supreme Court held this procedure was a "revolving door" that allowed the State to circumvent the release order. *Id.* at 156. While recognizing that "there is no 'absolute immunity' from rearrest after release" for violation of its 72-hour rule, the court reasoned that the State must have legal grounds for re-arrest, which it concluded in Mr. Watkins's circumstances required a warrant. *Id.* at 155 (quoting *State v. Wallace*, 392 So. 2d 410, 413 (La. 1980)).

*Watkins* would support Mr. Moore's argument if he had been held for more than 48 hours in June without a probable cause hearing. As Mr. Moore contends, to allow law enforcement to detain individuals for more than 48 hours without a judicial determination of probable cause, followed by release, re-arrest, and an additional 48 hours within which to conduct a preliminary appearance, would subject defendants to the prolonged detention without a judicial determination of probable cause forbidden by the Fourth Amendment. But that was not the situation here. Even Mr. Moore's combined June and October pre-hearing detention (let alone the June detention itself) did not exceed 48 hours. The concerns addressed in *Watson* do not apply.

*Holmes* is similarly inapposite. There, a defendant was arrested in March 1967 and, following an indictment, was released on bond. *Holmes*, 452 F.2d at 260. He was then re-arrested in October without a warrant after a superseding indictment was returned. *Id.* On review, the Seventh Circuit found the re-arrest violated the Fourth Amendment because it served no purpose:

11

Not only must there be reason to believe that a prospective arrestee is guilty of a crime; in addition, there must be some purpose to be served by making an arrest. During the entire period between March and October 18, 1967, probable cause to believe that [the defendant] had committed an offense continued to exist because he was under indictment. But since he had been admitted to bail, no purpose could have been served by continually rearresting him. Although at large, in contemplation of the law he remained in custody. In historic terms, he was the prisoner of his bail.

The return of the second indictment justified a review of his custodial status. Additional charges might have made a rearrest proper, to be followed either by termination of bail or a modification of its conditions. In [this] case, however, when the second indictment was returned, the judge ordered no change in his custodial status. The subsequent arrest, therefore, had no greater purpose than if there had been no second indictment.

We recognize that a variety of valid causes for a rearrest of a person admitted to bail may exist, *see Carlson v. Landon*, 342 U.S. 524, 546-547, 72 S. Ct. 525, 96 L. Ed. 547 [(1952)], but certainly the continuing knowledge of his possible guilt of the offense charged in the indictment is not itself sufficient; otherwise, harassment by continual rearrests could be justified by the continuing existence of "probable cause."

*Id.* at 260-61 (footnotes omitted). *Holmes* applies what appears to be the general rule that where one has been released on bail, he cannot be arrested in the same jurisdiction on the same charge on which the original arrest was made. *See United States ex rel. Heikkinen v. Gordon*, 190 F.2d 16, 19 (8th Cir. 1951), *cited with approval in Carlson*, 42 U.S. at 546 n.47. By contrast, upon his release in June, Mr. Moore had not been charged, was not released on bail, and was under no formal requirement to appear.

Mr. Moore's novel argument on appeal has no basis in existing law. Failing to make the argument in the trial court could not be deficient performance.

12

No. 34327-8-III
*State v. Moore*

*Comment on the evidence*

Mr. Moore next assigns error to what he contends was a comment by the trial court on the evidence in violation of the Washington Constitution. At issue is the trial court's statement, made shortly after admitting the baggies of methamphetamine as exhibits: "Keep track of that. I don't want my courtroom becoming a superfund cleanup site." RP at 124.

Article IV, section 16 of the Washington Constitution provides: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." "The purpose of this provision is to prevent a jury from being influenced by knowledge conveyed to it by the trial judge as to the trial judge's opinion of the evidence submitted." *State v. Swan*, 114 Wn.2d 613, 657, 790 P.2d 610 (1990). A trial court improperly comments on the evidence if it effectively removes "a disputed issue of fact from the jury's consideration." *State v. Becker*, 132 Wn.2d 54, 65, 935 P.2d 1321 (1997).

Mr. Moore asserts that whether the substance in the baggies admitted into evidence was methamphetamine was a disputed issue of fact for the jury to resolve, but the record belies this assertion. Rather than challenging whether the baggies in evidence contained methamphetamine, defense counsel attempted to cast doubt on the chain of custody, suggesting that the methamphetamine in evidence had not come from Mr. Moore. In closing argument, defense counsel told jurors:

13

Is there a reasonable doubt that this substance contains—that this bag contains methamphetamine[?] No. You've got the lab reports.

This is P-3. And you'll be able to take this back in the jury room with you. And there's a lab report that goes with it that says this substance is methamphetamine.

This is P-1. And there's a lab report that goes with this that says that substance is methamphetamine.

Is there a reasonable doubt there? No.

. . . .

The hang-up is in the possession. Because for all of the testimony that we heard . . . we don't know when this got put in the bag. Det. Coe wasn't able to tell you. He doesn't know. He doesn't know who took it up to the evidence vault. He can't tell you.

Same with this one. He doesn't know when this went in the evidence bag, when he wrote his initials on it. He doesn't know when it got to the evidence vault . . . . He doesn't know whether he took it there. He doesn't know [whether] one of the other detectives took it there.

. . . .

Am I suggesting that Det. Coe made a mistake[?] Yes. . . .

. . . .

Police officers are human. They make mistakes. We understand that. But if there's a possibility that Det. Coe made mistakes like he did all morning on the stand, that's a reasonable doubt.

Because remember, folks, . . . no matter what the tape says, no matter what the stickers say, no matter what's on the lab report, there is nothing connecting the contents of these bags with Mr. Moore except the testimony of that mistaken officer.

RP at 174-78.

Mr. Moore argues on appeal that defense counsel's closing argument is not evidence. True. But his closing argument reveals what was and was not in dispute. Because it was not disputed that the baggies admitted into evidence contained methamphetamine, the trial court's attempt at humor cannot be characterized as a comment on the evidence.

14

No. 34327-8-III
*State v. Moore*

*Ineffective assistance: failure to object*

Mr. Moore next argues that his trial lawyer provided ineffective assistance of counsel by failing to object to testimony from Detective Coe that was irrelevant, prejudicial, or was prior bad act evidence precluded by ER 404(b). As earlier discussed, a claim of ineffective assistance fails unless it is demonstrated both that counsel's performance was deficient and that the defendant suffered prejudice as a result. Deficient performance is not shown by matters relating to trial strategy or tactics. *See State v. Sardinia*, 42 Wn. App. 533, 542, 713 P.2d 122 (1986). To prevail on an ineffective assistance of counsel claim based on the failure to object, the defendant must show (1) an absence of legitimate strategic or tactical reasons for failing to object, (2) that the objection would likely have been sustained if raised, and (3) that the result of the trial would have been different had the evidence not been admitted. *State v. Saunders*, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

Mr. Moore first contends defense counsel should have objected to Detective Coe's statement that Mr. Moore was transient, made during the detective's recount of Mr. Moore's failure to uphold his end of the cooperation agreement, which he also believes was improper:

Q    Did you make effort to make contact with him?
A    Yes. He had provided me with his cell phone number, and I called it
     a couple times afterwards and never could get hold of him. And he
     was transient, so I couldn't find him.

15

RP at 95. Mr. Moore argues that his transience and failure to uphold an agreement were irrelevant to proving the offense, which simply requires proof of the fact of possession and the nature of the substance. He argues that the evidence served only to paint him in a negative light to the jury.

The evidence served the additional purpose of explaining why Mr. Moore was not arrested for his June possession of narcotics until October, however, which in turn explained why, in October, the detective could perform a search incident to arrest. So Mr. Moore does not demonstrate that an objection to the evidence would have been sustained. And for tactical reasons, defense counsel might have preferred that the direct examination move on from the fact that the detective and Mr. Moore had not been in contact, rather than draw the jury's attention to the reasons why.

Mr. Moore next assigns error to the following testimony about the Kemper residence, specifically as it relates to alleged illicit behavior in proximity to a day care:

> That was the residence of Gary Kemper, who lived up here in the—in the Heights, right there on 20th next to the day care—right next to the day care. He was running drugs out of there. *And we'd received lots of complaints because of the traffic, because of needles and syringes being tossed into the yard where the kids play. The—the confrontation, the thefts in the area.* Shannon Grove herself had told us that she was involved with Gary Kemper, trafficking narcotics, and told us who that they were getting it from. So we knew about her involvement with him. And that's where she was at.

RP at 84 (emphasis added); *see also* RP at 126 ("And then the house is directly next to the day care, to the south."). Mention of the day care came up in the context of the

16

detective describing where the Kemper house was located, although what followed was arguably irrelevant. An objection or request to strike likely would have been sustained. But the information did not implicate Mr. Moore. And it provided support for defense counsel's closing argument that Detective Coe was not credible because his claim to have made a cooperation agreement with Mr. Moore made no sense. Defense counsel argued that Mr. Moore—a "small fish" to the task force—knew only Shannon Grove and Gary Kemper, whose involvement in drug trafficking was already well known to task force members. RP at 51. The decision not to object could well have been tactical.

Mr. Moore's next challenge relates to Detective Coe's statement about a "scenario" with Mr. Moore's son:

Q     Prior to October 7 did you have any other contact with Mr. Moore?
A     Not—not actual contact. He was—he was involved in a—scenario that—that occurred at a motel in Clarkston involving him and his son.
Q     He hadn't made any contact with you? And you—had you—caught up with him?
A     Before that?
Q     Before October 7.
A     Oh. Oh. I'm sorry. I apologize. No. No. Between the time of his arrest and release, and—and the time—I ultimately arrested him and put him in jail, he didn't have any contact at all with us.

RP at 95. Here again, the detective's testimony did not implicate Mr. Moore. Defense counsel could have made the tactical judgment not to draw attention or suggest, by objecting, that it did.

17

Mr. Moore then asserts defense counsel should have objected when, in reference to the June arrest, Detective Coe stated: "I believe [Mr. Moore] had a warrant or something, too. I can't remember." RP at 94. But defense counsel addressed this misstatement by the detective in a more effective way. Through cross-examination, he obtained the detective's concession that he was mistaken, a concession that supported the central theme of the defense closing argument: that the jury should reasonably doubt the State's case because of a number of mistakes made by Detective Coe.

Mr. Moore also objects to the following statement that he was involved in an earlier case:

Q You stopped him 'cause Shannon Grove was in his car.
A Yes, initially, yes.
Q Okay. So,—But there was nothing about his behavior—
A No.
Q Okay. —give you any reason to be suspicious of him.
A Other than—I've known him from the past, and I know what he's been involved in.
Q Okay. I thought you testified earlier that you hadn't met him face to face before.
A No. Not that I can recall. *But he had been a participant in—*
Q Okay. Okay.
A *—prior case.*
Q All right, Detective. All right.

RP at 108 (emphasis added). Mr. Moore cannot demonstrate that an objection to the detective's explanation would have been sustained by the trial court, which could have viewed the detective's answer as responsive to defense counsel's line of inquiry. And given the ambiguity of being "a participant" in a prior case, defense counsel might not

18

want to draw attention or suggest by moving to strike the testimony that Mr. Moore had been a *criminal* participant.

Finally, Mr. Moore argues defense counsel should have objected to the following testimony that suggested Mr. Moore was a drug trafficker:

> Because there were three baggies, it appears to us—*the only time that people do that is when they're going to be selling those bags.* They'll premeasure up, they'll set them—you know,—smaller baggies, so that if you want—20 or 40 or 60 they'll have them pre-measured out so they don't have to do it—like in a parking lot of something. They just pull out the bag that you want, it's already ready to go, just like at a grocery store.

RP at 92 (emphasis added). Relatedly, Mr. Moore argues an objection should have been made to Detective Coe's testimony that the task force uses "people like Mr. Moore"—meaning low-level drug traffickers—"to go into those places that they've been buying narcotics from and buying under our control." RP at 93.

Given the detective's testimony elsewhere that Mr. Moore was "low on the ladder," not a mid- to high-level trafficker of the sort targeted by the task force, Mr. Moore does not demonstrate a reasonable probability that but for counsel's failure to object, the outcome of the trial would have been different. RP at 93. The detective's characterization of Mr. Moore as a small-time trafficker was inconsequential in the face of the following evidence supporting the possession charges: the baggies and lab reports (albeit attacked on chain of custody grounds), Mr. Moore's presence at known narcotics trafficking locations in both June and October, his admission to Detective Coe in June

19

that the baggies in his possession contained methamphetamine, and a recording of the

following exchange with Detective Coe at the time of the June arrest:

Q     Okay, but you bought this dope from Shannon?
       *[Silence.]*
Q     Okay, you said you were gonna be square, this is the time to be
       square.
A     Yeah.
Q     Is there any more in your . . . your vehicle?
A     No, nothin', I—I don't know about the stuff I picked up, I don't
       know.
Q     Okay.
A     I can't answer for her, *[unintelligible]*, but I know I don't have
       nothin' other than what she gave me.

Ex. P-5 at 2 min., 5 sec., through 2 min., 35 sec.

### *Legal financial obligations*

Mr. Moore next argues the trial court erred when it imposed LFOs without

conducting the required individualized inquiry into his ability to pay. But Mr. Moore

made no objection to the trial court's finding that he had the present and future ability to

pay and thereby failed to preserve a claim of error. RAP 2.5(a); *State v. Blazina*, 182

Wn.2d 827, 833, 344 P.3d 680 (2015) ("[u]npreserved LFO errors do not command

review as a matter of right").

Mr. Moore was sentenced on April 4, 2016, more than a year after *Blazina*. A

majority of the panel declines to review this unpreserved claim of error.

20

No. 34327-8-III
*State v. Moore*

### *Appellate costs*

Mr. Moore asks us to waive appellate costs if he does not substantially prevail on appeal. He complied with our June 10, 2016 General Order[6] by requesting the waiver in his opening brief and simultaneously filing his report of continued indigency. Having reviewed his report, we exercise our discretion to deny costs on appeal. *See* RAP 14.2.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

---

[6] Gen. Order of Division III, *In re the Matter of Court Administration Order re: Request to Deny Cost Award* (Wash. Ct. App.), http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2016_001&div=III.